1  Maria S. Bellafronto (State Bar No. 161994)
   Aleksandr Korzh (State Bar No. 286613)
2  HOPKINS & CARLEY
   A Law Corporation
3  The Letitia Building
   70 S. First Street
4  San Jose, CA 95113-2406

5  *mailing address:*
   P.O. Box 1469
6  San Jose, CA 95109-1469
   Telephone:  (408) 286-9800
7  Facsimile:  (408) 998-4790

8  Attorney for Plaintiffs SOUTH DAKOTA TRUST
   COMPANY as Trustee of the Donna Wills 2014
9  Irrevocable Trust, and DONNA M. WILLS, an
   individual

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH DAKOTA TRUST COMPANY, Trustee of the Donna Wills 2014 Irrevocable Trust, and DONNA M. WILLS, an individual,<br><br>Plaintiffs<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. C-13-05860 EJD<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. **NEGLIGENCE;**<br>2. **FINANCIAL ELDER ABUSE;**<br>3. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**<br>4. **AIDING AND ABETTING FRAUD;**<br>5. **UNFAIR BUSINESS PRACTICE;**<br>6. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

Plaintiffs SOUTH DAKOTA TRUST COMPANY, Trustee of the Donna Wills 2014 Irrevocable Trust and DONNA M. WILLS, an individual (collectively, the "Plaintiffs") allege as follows:

350\1244076.2

SECOND AMENDED COMPLAINT                                CASE NO. C-13-05860 EJD

## GENERAL ALLEGATIONS

1. Plaintiff SOUTH DAKOTA TRUST COMPANY ("SDTC") is the Trustee of the Donna Wills 2014 Irrevocable Trust (hereafter, the "Donna Wills 2014 Trust").

2. The Wills Management, LLC Employee Welfare Benefit Plan, formerly referred to as the ECI Welfare Benefit Plan & Trust, dated December 1, 1997 (hereafter, the "Plan") was established in Santa Clara County.

3. Plaintiff DONNA M. WILLS is an individual who resides in Santa Clara County, and is a beneficiary under the Plan.

4. Plaintiffs are informed and believe, and thereon allege, that defendant AMERICAN GENERAL LIFE INSURANCE COMPANY ("American General" or "Defendant") is and was at all relevant times a corporation organized under the laws of the State of Texas, with its principal place in Houston, Texas. Defendant is in the business of selling life insurance and issuing life insurance policies throughout the state of California, including the County of Santa Clara.

## FACTUAL BACKGROUND

5. Donna Wills was married to Richard Wills until his death on or about September 27, 2005.

6. Sometime in or around 1997, Gary L. Thornhill ("Thornhill") became Richard and Donna Wills' financial advisor, operating at that time as the chairman of an entity known as The Private Consulting Group and later Medalist & Company, located at 2880 Lakeside Drive, Suite #112, Santa Clara, California.

7. On or about December 1, 1997, Thornhill set up the Plan, which was a certain employee welfare benefit plan under Section 419 of the Internal Revenue Code for the Wills, initially called the ECI Welfare Benefit Plan & Trust, dated December 1, 1997.

8. Plaintiffs are informed and believe and thereon allege that in or around 1997-1998, Thornhill was a licensed insurance agent for American General.

9. On or about April 20, 1998, Thornhill, on behalf of American General, sold the Wills a Joint Survivor Universal Life policy of insurance bearing policy number A70001695L,

for the benefit of Richard L. Wills and Donna M. Wills, the insureds (hereafter, the "Policy"). The Policy contained both a death benefit in the amount of $15,400,000 ("Death Benefit"), plus an accumulated cash surrender value of approximately $3,000,000, credited with interest ("Cash Value"). Plaintiffs are informed and believe and thereon allege that the Cash Value represented the accumulation of three annual premium payments of $1 million each, paid by the Wills under the Policy.

10. Under the Plan, the Cash Value of the Policy was available to the Wills, as the insureds, for payment of any unreimbursed medical expenses that Donna may have incurred after Richard's death.

11. Richard L. Wills died on September 27, 2005 at 70 years old, at which time Donna M. Wills became the sole beneficiary under the Plan and the remaining insured under the Policy.

12. Plaintiffs are informed and believe and thereon allege that from approximately 1998 when the Policy was issued, through at least mid-2010, Thornhill functioned as both as the producing agent and the servicing agent for the Wills' Policy on behalf of American General.

13. While the owner of the Policy was initially designated in 1998 as the ECI Welfare Benefit Plan (with Colonia Trust Company/Republic Bank as the Trustee), in or around December 2006, the ECI Welfare Benefit Plan terminated and the Wills Management, LLC Employee Welfare Benefit Plan became the owner of the Policy.

14. In or around February 2008, when Donna Wills was approximately 71 years old, Thornhill became the Successor Trustee of the Plan, replacing Republic Bank. At that time, Thornhill concurrently served both as the servicing agent for the Policy he sold the Wills, as well as the Trustee of the Plan, the current owner of the Policy.

**PRIOR LITIGATION INVOLVING THORNHILL AND AMERICAN GENERAL**

15. Plaintiffs are informed and believe and thereon allege that prior to 2010 American General was named as a defendant in multiple lawsuits where Thornhill, also a defendant, was accused of fraud, misrepresentation and breach of fiduciary duty, among other claims, in connection with his role as an insurance agent on behalf of American General. Such

lawsuits include, but may not be limited to, the following:

**The Dallas Action**:

16. Plaintiffs are informed and believe and thereon allege that on or about March 28, 1996, a lawsuit was filed in the County of Los Angeles, State of California, before being transferred to Santa Clara County, entitled *William Dallas, et.al., v. American General Life Insurance Company, Gary Thornhill, et.al.*, bearing civil case number CV759245 (the "Dallas Action").

17. In the Dallas Action, the plaintiffs alleged that American General and Thornhill had a special relationship in the insurance industry and that they breached fiduciary duties toward plaintiffs by, among other reasons, maximizing the commissions rather than acting in the best interests of the insured and making full disclosures about material issues relating to where and how their premium funds were applied (i.e., premiums were alleged to have been applied toward Thornhill's commissions and not the procurement of insurance coverage as represented). Indeed, Thornhill, as a life insurance sales agent for American General, was sued for, among other claims, constructive fraud, breach of fiduciary duty and fraud due to Thornhill's actions. The plaintiffs in the Dallas action sought as damages over $850,000 in premiums paid, plus punitive damages against Thornhill due to his willful, intentional, fraudulent and oppressive conduct.

**The Brix Action:**

18. Similarly, a couple years later, on or about October 5, 1998, American General and Thornhill were both sued in a lawsuit filed in the Santa Clara County Superior Court, entitled *Harry Brix, Mariann Brix and Harry G. and Mariann Brix Irrevocable Trust v. Gary Thornhill, et.al.*, bearing civil case number CV777108 (hereafter, the "Brix Action").

19. The Brix Action involved the sale of insurance policies to Mr. and Mrs. Brix who accused the defendants of fraud and breach of fiduciary duty resulting from Thornhill's pattern of fraudulent behavior toward his customers who purchased life insurance from him. In the Brix Action, the plaintiffs claimed that "Thornhill was known in the life insurance industry for making misrepresentations to, and deceiving, life insurance clients" and sought punitive

damages against Thornhill.

**The Berry Action**:

20. On or about May 23, 2008, American General and Thornhill were both sued in a class action lawsuit filed in the United States District Court, Northern District of Texas, entitled *Stephen Berry v. Indianapolis Life Insurance Company, et.al.*, bearing civil case number 3:08-CV-0248-B (hereafter, the "Berry Action").

21. The Berry Action concerned certain defined benefit plans (under Section 412(i) of the Internal Revenue Code), funded by life insurance policies. The plaintiffs alleged that the plans that Thornhill and the other defendants set up and funded with life insurance policies were actually tax shelters that the defendants knew or should have known would be scrutinized by the IRS and deemed abusive and illegal. Notably, the plan Thornhill set up for the plaintiffs in the Berry Action was similar to the Plan Thornhill set up for the Wills in the instant action – both represent plans that were set up and funded with life insurance policies, including policies issued by American General, proclaimed to be tax shelters that Thornhill and the other defendants knew or should have known could be later scrutinized by the IRS and deemed abusive and illegal.

22. The plaintiffs further alleged that the defendants conspired to market the plans and to sell the life insurance policies used to fund them by making fraudulent misrepresentations about the tax benefits of the plans and without disclosing the known risk that the IRS would deem the plans illegal. The plaintiff sued Thornhill for fraud and breach of fiduciary duties, among other claims, seeking treble and punitive damages.

**The Young Action**:

23. Shortly after the Berry action was filed, on or about October 20, 2008, another class action was filed against Thornhill, American General, and several others in the United States District Court, Northern District of Texas, entitled *Claude Young, et.al. v. Millennium Multiple Employer Welfare Benefit Plan, et.al.*, bearing civil case number DC-08-13325 (hereafter, the "Young Action").

24. In the Young Action, the defendants, including Thornhill and American General,

350\1244076.2

- 5 -

SECOND AMENDED COMPLAINT        CASE NO. C-13-05860 EJD

were sued for, among other claims, conspiring to defraud investors, fraud and breach of fiduciary duty. The lawsuit arose as a result of Thornhill and the other named defendants' role in selling the plaintiffs a "Millennium Plan" which was "an insurance sales scheme disguised as a purported employee welfare benefit plan [under Internal Revenue Code §419A(f)(6) – often referred to as a "419 Plan"], but which in reality is simply a tool used to sell insurance and generate significant profits for all Defendants." The plaintiffs alleged that the 419 plan they were sold was a fraudulent device, solely to facilitate the sale of whole life policies which would generate "exorbitant commissions" and that it was never viewed by the IRS to be a bona fide plan for tax purposes.

25. Notably, the 419 plan that Thornhill sold the plaintiffs in the Young Action is similar, if not identical, to the Plan he sold the Plaintiffs in this action. In addition, American General issued the policies of insurance that funded the plan with Thornhill as its agent, and a substantial percentage of the premiums paid toward the American General policies were paid to American General's agents, such as Thornhill. Virtually all of the money invested by the plaintiffs in the Young Action was allegedly lost in the first year because of Thornhill and the other defendants' actions. As a result, the plaintiffs sought reimbursements of all their contributions paid to their 419 Plans, as well as treble damages and punitive damages.

**The Ribeiro Action:**

26. More recently, on or about March 29, 2010, a lawsuit was filed in the County of Washoe, State of Nevada, entitled *Daniel Laliberte and Stephen Tarke, as Trustees of the Johnny A. Ribeiro, Jr. 2007 Irrevocable Life Insurance Trust, and Johnny A. Ribeiro, Jr., Individually vs. American General Life Insurance Company, Concord Capital Funding, Inc., Medalist & Company Corp., Gary Thornhill, Thornhill Financial Corporation, and Ronald G. Coleman*, bearing civil case number CV09-03588 (hereafter, the "Ribeiro Action").

27. In the Ribeiro Action, both Thornhill and American General were sued for fraud and breach of fiduciary duty, among other claims, due to Thornhill's misrepresentations regarding the types of insurance policies offered, the rate of return on such policies, and other material information that financially harmed the plaintiffs in excess of $32 million. The

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

350\1244076.2

- 6 -

SECOND AMENDED COMPLAINT

CASE NO. C-13-05860 EJD

plaintiffs also sought punitive damages as a result of Thornhill's "fraudulent, wanton, malicious and oppressive conduct."

### AMERICAN GENERAL TERMINATED THORNHILL'S APPOINTMENT IN 2010

28. On or about June 6, 2010, after its involvement with Thornhill in at least five different lawsuits accusing Thornhill of committing fraud and breaching his fiduciary duties to various policyholders to whom he sold American General life insurance policies, American General terminated Thornhill's ability to sell insurance on behalf of American General.

29. Plaintiffs are informed and believe and thereon allege that as a result of such termination, Thornhill was no longer authorized to represent American General or its affiliates pursuant to his appointment. However, Thornhill continued to act as the servicing agent for the Wills' Policy in doing the acts mentioned herein below.

### THORNHILL'S PERSONAL LOANS AGAINST WILLS' CASH VALUE IN 2011

30. On or about January 28, 2011, without Donna Wills' knowledge or authorization, Thornhill, as Trustee of the Plan, requested that American General disburse $600,000.00 from the Cash Value of Wills' Policy. As a result, American General, without performing any due diligence, authorized the disbursement of the net amount of $591,777.53 as a "loan" to Thornhill and mailed Thornhill a check for said amount on or about January 31, 2011.

31. Approximately, nine months later, on or about October 27, 2011, without Donna Wills' knowledge or authorization, Thornhill, as Trustee of the Plan, requested that American General disburse *another $800,000.00* from the Cash Value of Wills' Policy. As a result, American General, without performing any due diligence, authorized the disbursement of $818,066.37 as another "loan" to Thornhill and mailed Thornhill a check for said amount on or about October 28, 2011.

32. To date, Thornhill has received unauthorized distributions totaling $1,409,843.90 from American General under Wills' Policy which sum has not been repaid by Thornhill and which sum continues to accrue interest as an outstanding loan under the Policy.

33. Thornhill has admitted that he willfully withdrew a total of $1,409,843.90 from the Cash Value under Plaintiffs' Policy for his own personal use and benefit, committing a

breach of his fiduciary duties as trustee. It was only through Donna Wills' good fortune that her financial advisors were able to detect Thornhill's fraud upon asking for a review of the Policy at the end of 2012, thereby avoiding additional losses to her Cash Value.

34. In or about July 2014, ownership of the Policy was transferred to the Donna Wills 2014 Trust. At this time, the Donna Wills 2014 Trust was also named as the beneficiary under the Policy. As a result, the Donna Wills 2014 Trust is the successor in interest to the Plan and the Wills Family Irrevocable Trust II, which was formerly the beneficiary of the Plan.

## FIRST CAUSE OF ACTION
### (Negligence)

35. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 34 of this First Amended Complaint as though set forth fully herein.

36. Defendant, as Donna Wills' insurer, had a special relationship with Donna Wills, the insured.

37. Defendant's knowledge of Thornhill's multiple prior lawsuits, as referenced hereinabove, combined with its knowledge that Thornhill was the trustee of the Plan and had access to the Cash Value, constitutes special circumstances giving rise to a duty to act and to protect the Plaintiffs from Thornhill's foreseeable actions, which include but are not limited to his foreseeable breaches of fiduciary duty, fraud and misappropriations.

38. Defendant owed a duty of care to Plaintiffs to use reasonable skill, care and prudence to properly manage, hold and/or otherwise oversee and protect Donna Wills' benefits under her Policy, including the funds held in her Cash Value, which duties included exercising due diligence and investigation of suspicious activity when there is a foreseeable risk of harm to the benefits afforded to Donna Wills under her Policy.

39. Defendant breached its duty by, among other things, engaging in the follow actions and/or inactions:

(a) Failing to exercise any due diligence before allowing Thornhill to misappropriate approximately $1.4 million between January 2011 and October 2011, after his appointment had been terminated by Defendant approximately 6 months before the first $600,000

loan was made to Thornhill and despite the fact that Defendant had actual knowledge of Thornhill's fraudulent behavior, untrustworthiness and past breaches of fiduciary duties;

(b) Failing to place any kind of "alert" on the Plaintiffs' Policy when Defendant had actual knowledge that Thornhill, Donna Will's trustee of the Plan, had on numerous prior occasions been accused of fraud and breach of fiduciary duty, and further given that Donna Wills, who was 74 years old in 2011, was lacking any knowledge of Thornhill's untrustworthiness;

(c) Failing to notify Donna Wills or call to her attention that her trustee, Thornhill, whom Defendant knew was previously accused of fraud and breach of fiduciary duty on several prior occasions while he served as Defendant's agent, was withdrawing $1.4 million as "loans" to himself under her Cash Value, thereby reducing the benefits under the Policy;

(d) Ignoring the danger signals, "red flags" and conflict of interest associated with Thornhill having set up Plaintiffs' life insurance plan and thereafter concurrently serving as the trustee of the Plan/owner of the Policy, as well as Donna Wills' loan servicing agent, despite being in the best position to detect such danger signals and red flags; and

(e) Failing to send any type of "comfort letter" or "activity letter" to Donna Wills, Defendant's insured, about the sizeable loans Thornhill made against her Cash Value, including but not limited to its failure to accurately report the outstanding and substantial "loan" balance on Defendant's 2012 annual statement for the Policy.

40. As a direct and proximate result of Defendant's breaches of duty, Plaintiffs have been damaged in an amount to be proven at trial, but believed to be no less than $1,409,843.90, together with interest thereon.

41. In addition, Defendant's breaches of duty caused Plaintiff to suffer consequential losses, including but not limited to the diminished viability of the Policy, including the potential collapse of said Policy due to the significantly decreased balance of the Cash Value.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION
### (Financial Elder Abuse)

42. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 41 of this First Amended Complaint as though set forth fully herein.

43. Defendant's conduct constitutes financial elder abuse in violation of California Welfare & Institutions Code section 15610.30 (the "Elder Abuse and Dependent Adult Civil Protection Act"). This statute provides that financial abuse occurs when "a person or entity… [t]akes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both…*or assists in so doing.*"

44. Based on the foregoing actions and inactions, Defendant assisted Thornhill in taking, secreting, misappropriating and/or retaining $1.4 million from Donna Wills' Policy when she was 74 years of age.

45. Defendant's conduct was outrageous. Defendant had actual knowledge that Thornhill was an untrustworthy sales agent accused of *repeated breaches of fiduciary duties* on numerous occasions in the past, and the trustee of an elderly woman's trust that owned the Policy. As mentioned hereinabove, Defendant ignored all danger signals and red flags of having Thornhill, its former sales agent who was repeatedly accused of breach of fiduciary duty and fraud, oversee and advise Plaintiffs about the Policy, as well as serve as the trustee of the Plan that owned the Policy and the servicing agent for such Policy. Defendant knew or should have known that Thornhill's requests for the two sizable loans, totaling almost *half* of the entire Cash Value amount in a nine month period, was taken for a wrongful use and likely to harm Donna Wills, an unsuspecting elderly insured. Indeed, Defendant's "Loan History" report establishes that the loans from the prior three years (2008 through 2010) averaged only about $8,000.00 each year, or .01 percent of the amount of the loans Thornhill made in 2011.

46. Plaintiffs have been damaged by Defendant's aforementioned financial elder abuse and are therefore entitled to damages under Welfare & Institutions Code section 15657, including (1) reasonable general damages; and (2) attorney's fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION
### (Aiding and Abetting Thornhill's Breach of Fiduciary Duty)

47. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 46 of this First Amended Complaint as though set forth fully herein.

48. Thornhill, as the trustee of the Plan, undertook and owed Plaintiffs a fiduciary duty.

49. Thornhill's admitted misappropriation of approximately $1.4 million from Plaintiffs' Policy for his own personal benefit was an indisputable breach of his fiduciary duties.

50. Defendant substantially assisted Thornhill's misappropriation of funds by

allowing him to obtain the funds from the Cash Value without conducting any due diligence, investigation of his actions or notification to Donna Wills, its insured, despite its full knowledge of Thornhill's untrustworthiness, fraud and past breaches of fiduciary duties, in addition to the actions and inactions mentioned hereinabove.

51. Defendant knowingly derived an economic benefit from Thornhill's breach of fiduciary duty by, among other things, profiting from: (i) the "loans" themselves; (ii) the accrual of interest against the Cash Value; and (iii) Plaintiffs' potential payment of additional premiums in order to maintain the benefits under the Policy.

52. By the foregoing reasons, Plaintiffs have been damaged by Defendant's aiding and abetting of Thornhill's misappropriation of funds in an amount no less than $1.4 million, together with interest thereon and all consequential losses arising therefrom.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### FOURTH CAUSE OF ACTION
**(Aiding and Abetting Thornhill's Fraud)**

53. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 52 of this First Amended Complaint as though set forth fully herein.

54. Thornhill, as the trustee of the Plan, intentionally misrepresented, mislead and concealed material facts about the "loans" he represented to be making on behalf of Donna Wills for her benefit.

55. The true facts are that Thornhill did not "borrow" the $1.4 million for the benefit of Donna Wills, the insured. Rather, he admitted misappropriating those funds from Plaintiffs' Policy for his own personal use and benefit.

56. Donna Wills relied upon Thornhill's representations that he would act, as trustee of the Plan, in her best interests and borrow money out of the Cash Value only as necessary to pay for Donna Wills' unreimbursed medical expenses. Donna Wills' reliance was reasonable and justifiable given that Thornhill served as her trustee and prior to 2011, she had no reason to believe that he would misappropriate her funds using false pretenses. In addition, given the fiduciary relationship between the Thornhill and Donna Wills, Plaintiffs had the right to rely on

- 11 -
SECOND AMENDED COMPLAINT  CASE NO. C-13-05860 EJD

Thornhill's actions and representations made without the duty of further inquiry. *Davis v. Kahn* (1970) 7 Cal. App.3d 868, 878; *Greenfield v. Insurance Inc.* (1971) 29 Cal.App. 3d 803, 811.

57. Defendant substantially assisted Thornhill's fraud by allowing him to obtain the funds from the Cash Value without conducting any due diligence, investigation of his actions or notification to Donna Wills, its insured, despite its full knowledge of Thornhill's untrustworthiness, fraud and past breaches of fiduciary duties, in addition to the actions and inactions mentioned hereinabove.

58. Defendant knowingly derived an economic benefit from Thornhill's fraud by, among other things, profiting from: (i) the "loans" themselves; (ii) the accrual of interest against the Cash Value; and (iii) Plaintiffs' potential payment of additional premiums in order to maintain the benefits under the Policy.

59. By reasons of the foregoing, Plaintiffs have been damaged by Defendant's aiding and abetting of Thornhill's misappropriation of funds in an amount no less than $1.4 million, together with interest thereon and all consequential losses arising therefrom.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### FIFTH CAUSE OF ACTION
(Unfair Business Practices)

60. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 59 of this First Amended Complaint as though set forth fully herein.

61. California Business & Professions Code section 17200 et.seq., the Unfair Competition Law ("UCL"), is designed to prohibit unfair competition, described as any "unlawful, unfair or fraudulent" business act or practice.

62. Plaintiffs are informed and believe and thereon allege that Defendant's aforementioned conduct constituted an unlawful, unfair and fraudulent business practice under the UCL.

63. Defendant's conduct was unlawful in that it violated not only the Elder Abuse and Dependent Adult Civil Protection Act, but also Welfare & Institutions Code section 15630.1 which requires Defendant, as a financial institution, to report any suspected financial abuse of an

- 12 -
350\1244076.2
SECOND AMENDED COMPLAINT    CASE NO. C-13-05860 EJD

elder. Plaintiffs are informed and believe and thereon allege that Defendant failed to timely report Thornhill's reasonably apparent financial abuse of Plaintiffs.

64. Defendant's conduct was also unfair in light of the fact that while Defendant terminated Thornhill's appointment to sell insurance for American General in or around June 2010, after years of litigation with Thornhill relating to his repeated fraud and breaches of fiduciary duties and despite all the danger signals and red flags present, Defendant allowed Thornhill to continue to serve as Donna Wills' loan servicing agent (concurrently as the trustee of the Plan) and authorized Thornhill's two written requests for loans in the total amount of $1.4 million, thereby depriving Donna Wills of her benefits under the Policy.

65. California Business & Professions Code section 17200, et.seq. entitles Plaintiffs to restitution from Defendant for their injuries and also entitles and empowers this Court to disgorge any profits obtained by them through the unfair and unlawful business practice as alleged herein.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### SIXTH CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

66. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 65 of this First Amended Complaint as though set forth fully herein.

67. In every contract, the law implies a covenant of good faith and fair dealing such that neither party will do anything that will deprive the other of the benefits of the contract. In entering into a contractual relationship with Plaintiffs of life insurance, Defendant owed Plaintiffs a duty to act in good faith and to deal fairly with Plaintiffs so as not to deprive Plaintiffs of the benefits of the Policy.

68. Plaintiffs are informed and believe, and thereon allege, that in doing the acts alleged hereinabove, Defendant has breached the duty of good faith and fair dealing.

69. As a direct, proximate and legal cause of Defendant's breach of the covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount not yet ascertained, but which shall be proven at trial.

70. As a further proximate result of Defendant's breaches as alleged herein, Plaintiffs have been compelled to retain legal counsel and have incurred and continue to incur significant legal fees and costs which are recoverable under the Policy.

**PRAYER FOR RELIEF**

Accordingly, Plaintiffs pray for judgment against Defendant as follows:

AS TO THE FIRST CAUSE OF ACTION:

1. For damages according to proof at trial in an amount no less than $1,409,843.90, plus interest;
2. For general damages;
3. For costs of suit herein;
4. For interest as allowed by law; and
5. For such other and further relief as the Court deems just and proper.

AS TO THE SECOND CAUSE OF ACTION:

1. For damages according to proof at trial;
2. For treble damages pursuant to the Welfare & Institutions Code as the Court or jury shall award;
3. For attorneys' fees pursuant to the Welfare & Institutions Code;
4. For costs of suit herein;
5. For interest as allowed by law; and
6. For such other and further relief as the Court deems just and proper.

AS TO THE THIRD CAUSE OF ACTION:

1. For damages according to proof at trial;
2. For punitive damages;
3. For costs of suit herein;
4. For interest as allowed by law; and
5. For such other and further relief as the Court deems just and proper.

AS TO THE FOURTH CAUSE OF ACTION:

1. For damages according to proof at trial;

2. For punitive damages;
3. For costs of suit herein;
4. For interest as allowed by law; and
5. For such other and further relief as the Court deems just and proper

AS TO THE FIFTH CAUSE OF ACTION:

1. For damages according to proof at trial;
2. For restitution and/or disgorgement of profits;
3. For costs of suit herein;
4. For interest as allowed by law;
5. For attorneys' fees; and
6. For such other and further relief as the Court deems just and proper.

AS TO THE SIXTH CAUSE OF ACTION:

1. For damages according to proof at trial;
2. For attorneys' fees;
3. For costs of suit herein;
4. For interest as allowed by law; and
5. For such other and further relief as the Court deems just and proper.

Dated: August 31, 2015

HOPKINS & CARLEY
A Law Corporation

By: _____
Maria S. Bellafronto
Aleksandr Korzh
Attorneys for Plaintiffs SOUTH DAKOTA TRUST COMPANY as Trustee of the Donna Wills 2014 Irrevocable Trust, and DONNA M. WILLS, an individual

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

350\1244076.2

- 15 -

SECOND AMENDED COMPLAINT

CASE NO. C-13-05860 EJD

# PROOF OF SERVICE

I, ELENA AMARO, the undersigned, declare:

I am a citizen of the United States and employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 70 S. First Street, San Jose, CA 95113. On the date below, I served a copy of the within document(s):

**SECOND AMENDED COMPLAINT FOR: (1) NEGLIGENCE; (2) FINANCIAL ELDER ABUSE; (3) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; (4) AIDING AND ABETTING FRAUD; (5) UNFAIR BUSINESS PRACTICE; AND (6) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Hopkins & Carley, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Delivery Service agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by electronically mailing a true and correct copy through Hopkins & Carley's electronic mail system to the email address(es) set forth below, or as stated on the attached service list per agreement in accordance with Code of Civil Procedure section 1010.6(a)(6).

| | |
|---|---|
| Jodi K. Swick<br>EDISON, McDOWELL &<br>HETHERINGTON, LLP<br>1 Kaiser Plaza, Suite 1010<br>Oakland, CA 94612<br>Email: jodi.swick@emhllp.com | David T. McDowell *(pro hac vice)*<br>Jessica L. Wilson *(pro hac vice)*<br>Andrew R. Kasner *(pro hac vice)*<br>EDISON, McDOWELL &<br>HETHERINGTON, LLP<br>3200 Southwest Freeway, Ste. 2100<br>Houston, TX 77027<br>Email: david.mcdowell@emhllp.com<br>jessica.wilson@emhllp.com<br>andrew.kasner@emhllp.com |

350\1250512.1

PROOF OF SERVICE

Steven R. Levy
17670 Woodland Avenue
Morgan Hill, CA 95037
Email: stevelevy@verizon.net
slevy@bigfoot.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the California that the above is true and correct.

Executed on September 1, 2015, at San Jose, California.

*Elena Amaro*

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

350\1250512.1

- 2 -

PROOF OF SERVICE