Jodi K. Swick, No. 228634
**EDISON McDOWELL & HETHERINGTON LLP**
1 Kaiser Plaza, Suite 1010
Oakland, CA 94612
Telephone: 510.628.2145
Facsimile: 510.628.2146
Email: jodi.swick@emhllp.com

David T. McDowell (admitted *pro hac vice*)
Jessica L. Wilson (admitted *pro hac vice*)
Andrew R. Kasner (admitted *pro hac vice*)
**EDISON McDOWELL & HETHERINGTON LLP**
3200 Southwest Freeway, Suite 2100
Houston, TX 77027
Tel: 713.337.5580
Fax: 713.337.8850
Email: david.mcdowell@emhllp.com
jessica.wilson@emhllp.com
andrew.kasner@emhllp.com

Attorneys for Defendant/Third-Party Plaintiff
AMERICAN GENERAL LIFE INSURANCE COMPANY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

SOUTH DAKOTA TRUST COMPANY, trustee of the Donna Wills 2014 Irrevocable Trust II, and DONNA M. WILLS, an individual,

Plaintiffs,

vs.

AMERICAN GENERAL LIFE INSURANCE COMPANY, and DOES 1-10, Inclusive,

Defendants,

and

RELATED THIRD PARTY COMPLAINT

Case No. C-13-05860 EJD

**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

**FED. R. CIV. P. 56**

Date: December 3, 2015
Time: 9:00 a.m.
Courtroom: 4, 5th Floor
Judge: Hon. Edward J. Davila

Supporting Documents:
1. Movant's Separate Statement
2. Declaration of Andrew R. Kasner and Accompanying Exhibits
3. Declaration of Michael A. Sepanski and Accompanying Exhibits
4. Declaration of Margaret A. Gaffigan
5. [Proposed] Order

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 3, 2015 at 9:00 a.m. in Courtroom 4, 5th Floor, 280 S. 1st Street, San Jose, California, Defendant American General Life Insurance Company will move and hereby does move the Court for an order granting it summary judgment.

American General's motion for summary judgment seeks dismissal of each cause of action asserted against it in Plaintiffs' Second Amended Complaint. The motion is made pursuant to Federal Rule of Civil Procedure 56 and is based on this Notice and Motion, the attached Memorandum of Points and Authorities, the Separate Statement and attached exhibits, the Court's file and records, and upon such other matters as the Court may consider at the time of hearing.

Date: October 29, 2015

EDISON, MCDOWELL & HETHERINGTON, LLP

By: /s/ David T. McDowell
Jodi K. Swick
David T. McDowell*
Jessica L. Wilson*
Andrew R. Kasner*

.

ATTORNEYS FOR AMERICAN GENERAL LIFE INSURANCE COMPANY
* Admitted *pro hac vice*

## TABLE OF CONTENTS


I. INTRODUCTION AND STATEMENT OF THE ISSUES ..... 5
II. STATEMENT OF UNDISPUTED MATERIAL FACTS ..... 6
A. Gary Thornhill's Relationship with the Willses Pre-Dates the Policy's Sale ..... 6
B. The 419 Plan and the Policy's Issuance ..... 7
D. Donna Wills Appoints Thornhill as Plan Trustee ..... 9
E. American General Terminates Thornhill's Appointment ..... 10
F. Thornhill Steals $1.4 Million from the Plan ..... 10
G. The Theft is Discovered; Donna Wills Fails to Report Thornhill to Authorities ..... 11
H. The Policy's Status Today ..... 12
III. ARGUMENT AND AUTHORITIES ..... 13
A. Summary Judgment Standard ..... 13
B. Donna Wills Lacks Standing to Sue American General ..... 13
C. SDTC's Claims Fail as a Matter of Law ..... 14
1. The Elder Abuse Claim Fails for Lack of Standing ..... 14
2. American General Did Not Breach the Implied Covenant of Good Faith ..... 15
3. SDTC Can Identify No Legal Duty Breached by American General. ..... 16
a. Legal Standard Applicable to Negligence ..... 17
b. American General Lacked Authority to Prevent A Trustee Change ..... 17
c. The Policy Obligated American General to Process Loan Requests ..... 18
d. American General Owed no Duty to Warn ..... 19
4. SDTC's Aiding and Abetting Causes of Action are Legally Deficient ..... 21
5. SDTC Has Not Alleged a Violation of the Unfair Competition Law ..... 22
a. SDTC Has Not Alleged Permissible Damages Under the UCL ..... 22
b. American General Did Not Act Unlawfully ..... 23
c. American General Did Not Treat SDTC Unfairly ..... 24
IV. CONCLUSION ..... 25


## TABLE OF AUTHORITIES

**Cases**


*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130 (9th Cir. 2000) ..... 13
*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013) ..... 22, 23
*Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086 (9th Cir. 2003) ..... 16
*Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 26 Cal. Rptr. 3d 401 (2005) ..... 21
*Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 163 Cal. Rptr. 3d 637 (2013) ..... 17

*Daugherty v. Am. Honda Motor Co., Inc.*,
144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006)....................23

*Delgado v. Am. Multi-Cinema, Inc.*,
72 Cal. App. 4th 1403, 85 Cal. Rptr. 2d 838 (1999)....................17

*Dunkel v. eBay Inc.*, 5:12-cv-01452 (EJD), 2014 WL 1117886 (N.D. Cal. Mar. 19, 2014)..........15

*Gaitan v. Mortg. Elec. Registration Sys.*,
EDCV09-1009 (VAP) (MANx), 2009 WL 3244729 (C.D. Cal. Oct. 5, 2009)..................19

*Grigsby v. Russell*, 222 U.S. 149 (1911)....................20

*Griswold v. Coventry First LLC*, 762 F.3d 264 (3d Cir. 2014)....................20

*Gutierrez v. State Farm Mut. Ins. Co.*,
5:11-cv-03111 (EJD), 2012 WL 398828 (N.D. Cal. Feb. 7, 2012)....................13

*In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030 (N.D. Cal. 2012)....................15

*In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089 (N.D. Cal. 2013)....................13

*In re Tobacco Cases II*, 240 Cal. App. 4th 779, 192 Cal. Rptr. 3d 881 (2015)....................22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992)....................13

*Marble Bridge Funding Grp., Inc. v. Liquid Capital Exch.*,
No. 5:15-cv-00177 (EJD), 2015 WL 5654844 (N.D. Cal. Sept. 25, 2015)....................21

*McIntyre v. Colonies-Pac., LLC*, 228 Cal. App. 4th 664, 175 Cal. Rptr. 3d 440 (2014)....................17

*Morris v. Choicepoint Servs., Inc.*,
No. C-06-1224 SC, 2006 WL 2479122 (N.D. Cal. Aug. 28, 2006)....................13, 14, 15

*Rizzo v. State Farm Ins. Co.*, 305 P.3d 519 (Idaho 2013)....................19

*Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256 (N.D. Cal. 2014)....................23

*Rubio v. Capital One Bank*¸ 613 F.3d 1195 (9th Cir. 2010)....................24

*Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994)....................21

*Thrivent Fin. for Lutherans v. Strojny*, 882 F. Supp. 2d 260 (D. Mass. 2012)....................19

*Villa v. San Francisco Forty-Niners, Ltd.*,
--- F. Supp. 3d ----, No. 5:12-cv-05481-EJD,
2015 WL 2250239 (N.D. Cal. May 13, 2015)....................13

*Wayne Merritt Motor Co. v. New Hampshire Ins. Co.*,
11-cv-01762 (LHK), 2011 WL 5025142 (N.D. Cal. Oct. 21, 2011)....................19

*Wolf v. Walt Disney Pictures & Tel.*, 162 Cal. App. 4th 1107, 76 Cal. Rptr. 3d 585 (2008)..........15

**Statutes**

CAL. BUS. & PROF. CODE § 17200....................24

CAL. INS. CODE § 12906....................18

CAL. INS. CODE § 12921....................18

CAL. WELF. & INST. CODE § 15610.30....................16

CAL. WELF. & INST. CODE § 15630.1....................25

## I. INTRODUCTION AND STATEMENT OF THE ISSUES

As the duly appointed trustee of the Wills Management, LLC Employee Welfare Benefit Plan (the "Plan"), Gary Thornhill borrowed $1.4 million from an American General life insurance policy owned by the Plan and subsequently stole that money from the Plan's bank account. The Plan and Plaintiffs never reported Thornhill to the authorities. Instead, they settled with him, and took a stake in his future insurance sales. Plaintiffs now seek to hold American General liable for Thornhill's criminal acts. Plaintiffs' claims fail as a matter of law and should be dismissed.

First, Donna Wills lacks Article III standing. She did not own the American General policy at any relevant time, has no rights under the policy, was never designated a policy beneficiary, and relinquished all interest in the policy to the Donna Wills 2014 Irrevocable Trust, II (the "2014 Trust"). Without any ownership or other legal interest in the policy, Donna Wills was not injured and lacks standing to assert claims against American General.

The claims of South Dakota Trust Company ("SDTC"), suing as trustee of the 2014 Trust, also fail. Its financial elder abuse claim is untenable because neither SDTC nor any predecessor trust had a trustee who was an elder. Further, American General complied with all terms of the life insurance policy and has denied no policy benefits, thus rendering the Trust's duty of good faith and fair dealing claim legally infirm. Also, the Trust cannot, as a matter of law, maintain its claim under California's unfair competition law. Finally, SDTC cannot articulate any legal duty owed (much less breached) by American General. As Donna Wills' financial advisor told her: "In my opinion, I do not see that American General is negligent. They simply took direction to process a loan from the Plan Trustee, Gary Thornhill. The breach of fiduciary duty happened when Gary withdrew funds from the Plan/Trust."

Given the arguments below, American General is entitled to summary judgment.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Gary Thornhill's Relationship with the Willses Pre-Dates the Policy's Sale

Donna and Richard Wills met Gary Thornhill at least twenty years ago. (*See* Declaration of Andrew R. Kasner ("Kasner Decl."), Ex. D, p. 51:6–8; Ex. E, p. 20:5–10.)[1] Thornhill's relationship with the Willses went far beyond selling life insurance. He assisted them with various estate planning needs and provided them with "core planning" services, which, among other things, encompassed the creation and/or preparation of living trusts, power of attorneys, pour-over wills, and other estate planning services. (*See id.* at Ex. E, 23:11–14.) Over the years, Thornhill also provided similar "core [estate] planning" services for the Willses three adult children. (*Id.* at pp. 19:11–20:4.)

In addition, Thornhill provided the Willses with tax strategies "to avoid ordinary income tax" and to minimize estate taxes. (*See* Kasner Decl., Ex. E, p. 39:4–9.) For example, Thornhill suggested that the Willses establish a residence in Nevada to avoid California's income tax, and participate in an "oil and gas program" that used a $100,000 investment to create up to $300,000 of tax deductions. (*Id.* at pp. 39:15–40:2; 40:21–42:1; Ex. 59.)[2]

Thornhill also utilized the Willses as his private lender. In 2003, the Willses lent Thornhill $400,000 so Thornhill could purchase a home in Half Moon Bay, California. (Kasner Decl., Ex. D, pp. 87:21–90:10; Ex. E, pp. 44:11–51:17; Ex. 60.) Although the Willses' original loan to Thornhill, dated December 5, 2003 and executed on July 5, 2005, required the principal to be paid within twelve months, Thornhill defaulted on the note. (*Id.* at Ex. E, 47:23–49:5.) Instead of repaying the loan, Thornhill renewed the note with Donna Wills on December 1, 2008, and again during the course of this litigation. (*See id.* at pp. 72:20–74:23; Ex. 74.)

Thornhill also made (disastrous) investment recommendations to the Willses. For instance, Donna Wills, on Thornhill's advice, invested $1 million with Sand Hill Capital Partners,

[1] Lettered exhibits reference documents not otherwise introduced at a deposition—such as transcripts and other materials produced in discovery.

[2] Numbered exhibits reference documents introduced as exhibits at depositions. Deposition exhibits were numbered sequentially pursuant to Civil L.R. 30-2, and American General uses the same numbering from the depositions in this motion for summary judgment to avoid any confusion over which exhibits are referenced herein.

III on January 31, 2008, a Ponzi scheme run by William J. "Boots" Del Biaggio, III. (Kasner Decl., Ex. D, pp. 129:8–25, 136:7–25; Exs. 43, 67.) Thornhill also convinced one of Donna's children to invest in the Ponzi scheme. (*Id.* at Ex. C., pp. 36:4–45:13; Exs. 39–42.) The fraud was uncovered in May 2008 and litigation ensued. (*Id* at Ex. D, 150:2–16; Ex. 43.) Thornhill sat on the board for one of the Sand Hill Capital entities, and was alleged (in litigation to which Donna was a party) to be complicit in the fraud. (*See id.* at Ex. D., pp. 128:25–129:5, 201:13–202:6; Ex. 44, ¶¶ 11–14.) Donna Wills reported a $900,000 loss for her Sand Hill investment to the Internal Revenue Service. (*See id.* at Ex. F, p. 74:1–24.)

**B. The 419 Plan and the Policy's Issuance**

On December 10, 1997, Thornhill, through his company First Financial Resources, suggested that Donna and Richard Wills—as the owners of D&H Manufacturing Company—enroll D&H in the ECI Welfare Benefit Plan (the "ECI Trust"), a multiple employer welfare benefit plan organized under Section 419 of the Internal Revenue Code. (Kasner Decl., Ex. 51.) First Financial described the ECI Trust accordingly: (1) D&H makes a tax deductible contribution to the ECI Trust; (2) the ECI Trust purchases life insurance on plan participants, naming itself as beneficiary; and (3) if a participant dies, the Trust pay death benefits to the participant's beneficiary. (*Id.* at WILLS000474.) D&H enrolled in the Trust, and Donna Wills, as corporate secretary of D&H, executed a number of documents, including a corporate resolution (*id.* at Ex. D., p. 61:6–10; Ex. 52), a disclosure and acknowledgment (*id.* at Ex. D, p. 66:9–17; Ex. 53), and D&H's ECI Welfare Benefit Plan Adoption Agreement (*id.* at Ex. D, p. 68:16–21; Ex. 54).

The ECI Welfare Benefit Plan and Trust Agreement (the "ECI Agreement") governed the terms of the ECI Trust. (*See* Kasner Decl., Ex. D, pp. 70:15–71:5, Ex. 55.) To participate, the ECI Agreement required D&H to make irrevocable contributions that equaled the cost of purchasing a life insurance policy in the amount set forth in D&H's ECI Welfare Benefit Plan Adoption Agreement. (*See id.* at ¶¶ 3.1, 3.2, 3.5.) Here, D&H agreed to fund life insurance for eligible employees equal to "1000 percent of the [employee's] highest compensation in any calendar year," not to exceed $15.4 million. (*See id.* at Ex. 54, ¶ IV(A).) Despite having roughly

100-130 employees at the time, the only "plan participants" were Donna and Richard Wills. (*Id.* at Ex. D, pp. 57:22–58:4, 73:20–75:2; Ex. 56.).

To effectuate D&H's enrollment, the ECI Trust purchased American General life insurance policy number A70001695L insuring Richard and Donna Wills (the "Policy"). (Second Am. Compl., ¶ 13.) The Policy carried a death benefit of $15.4 million. (*See* Kasner Decl., Ex. E., p. 6:16–24; Ex. 35, WILLS000248.) Pursuant to the Policy, the owner could take a loan against the Policy's cash value; nothing in the Policy gave American General the right to obstruct the loan process or conveyed a duty to American General to assess the wisdom of any requested loan. (*Id.* at Ex. 35, WILLS000260.) Further, the Policy provided no mechanism for American General to reject a Trust's appointment of a new trustee. (*Id.* at WILLS000261.)

Between 1998 and 2000, D&H—not Donna or Richard Wills—contributed $3 million to the ECI Trust, and D&H took $3 million in tax deductions for its contributions. (Kasner Decl., Ex. D, pp. 48:15–18, 168:25–169:9; Ex. E, p. 14:2–15.) In turn, the ECI Trust used the contributions to fund the Policy. Thornhill Assurance Services, Inc. (one of Thornhill's companies) last received commissions from American General relating to the Policy in 2000. (Declaration of Margaret M. Gaffigan, ¶ 3.) For reasons irrelevant to this litigation, the ECI Trust terminated in 2006 and the Plan became the Policy's owner. (Second Am. Compl., ¶ 13.) Republic Bank & Trust served as the Plan's trustee, and the Plan changed the Policy's beneficiary to itself. (*See id.*; Decl. of Michael A. Sepanski ("Sepanski Decl."), Ex. A.)

Just as the ECI Agreement governed the ECI Trust, the Wills Management, LLC Employee Welfare Benefit Plan Master Plan Document governed the Plan. (Kasner Decl., Ex. D, p. 124:12–23; Ex. 65.) The Master Plan Document, which Donna Wills signed as Wills Management, LLC's sole manager, sets forth the Plan's purpose (providing "fully-insured welfare benefits to the Employee/Participants of the sponsoring employer"), and the rights and obligations of Wills Management, LLC (as the Plan's sponsor) and Donna Wills (as the only Plan participant). (*See, e.g.*, *id.* at Ex. 65, Preamble and Articles II–IV.) The Master Plan Document also expressly delineates the rights and obligations of various parties—including third parties and insurers. Relevant portions of the Master Plan Document include:

> **Insurer.** The Insurer shall not be deemed to be a party to [the] Plan, ***and its obligations shall be measured and determined solely by the terms of its insurance contracts*** and other agreements executed by it. Anything in [the] Plan to the contrary notwithstanding, the rules of the Insurer with respect to any such contract shall govern any action to be taken by the Administrator or Trustee (*Id.* at ¶ 8.08) (emphasis added);
>
> **Third-Party Rights.** Neither the creation of this Trust, the establishment of the Plan, or the creation of the Trust Fund shall be construed to give any Participant or any other person any legal right against the Administrator, Sponsor, Trustee, ***Insurer*** or Employer, except as otherwise expressly provided for herein (*Id.* at ¶ 8.09) (emphasis added);
>
> **Third Persons.** All persons dealing with the Trustee are released from inquiring into the decision or authority of the Trustee and from seeing to the application of any policies or other property paid or delivered to the Trustee (*Id.* at ¶ 8.17).

The Master Plan Document also called for the creation of a trust, which is the "legal entity that holds all the assets of the Plan, including . . . life insurance contracts or proceeds . . . ." (*Id.* at ¶ 1.19; *see also* Ex. D, pp. 111:20–112:2, 115:22–9; Exs. 62 and 63.) Ms. Wills concedes that she did not own the Policy. (*Id.* at Ex. D, p. 27:12–16; *see also* Second Am. Compl., ¶ 13.)

Finally, the Master Plan Document set forth the benefits provided under the Plan. As the only Plan participant, Donna Wills could receive reimbursement for any medical expenses she incurred. (Kasner Decl., Ex. 65, ¶ 4.01(c).) The Plan, as the Policy's owner, regularly took loans against the Policy to pay Donna Wills' medical expenses. (*See id.* at Exs. 72, 73, and 76.)

### D. Donna Wills Appoints Thornhill as Plan Trustee

The document appointing Republic Bank as the Plan's trustee contemplated the appointment of a successor trustee:

> Upon the resignation or removal of the Trustee, [Wills Management, LLC] shall appoint a ***bank or duly licensed*** trust company/successor trustee who shall have the same powers and duties as those conferred upon the Trustee hereunder.

(Kasner Decl., Ex. 62, Article VIII (emphasis added).) Notwithstanding Thornhill's failure to repay the $400,000 loan, Donna Wills, as manager of Wills Management, LLC, appointed Thornhill Plan trustee in 2008. (Second Am. Compl., ¶ 14.) Obviously, Thornhill is neither a bank nor a trust company, nor did Thornhill have a license to serve as a trustee. (*See* Kasner Decl., Ex. E, p. 65:15–19.) Thornhill also testified that he advocated for Republic Bank's

removal as trustee to minimize the risk of an Internal Revenue Service audit of the Plan. (*See id.* at pp. 62:12–63:5.) The IRS was investigating other similar plans for which Republic Bank served as trustee. (*Id.*)

To appoint Thornhill, Wills Management, LLC and Thornhill executed the Trust Agreement for the Wills Management, LLC Employee Welfare Benefit Plan (the "Trust Agreement"). (Kasner Decl., Ex. D, 148:8–14; Ex. 69.) The Trust Agreement required Thornhill to "obtain and maintain a fidelity bond as required by ERISA." (*Id.* at Ex. 63, ¶ 11.7.) Despite this requirement, Wills Management, LLC made no efforts to confirm whether Thornhill complied. (*Id.* at Ex. D, p. 117:6–11.) Republic Bank, as the Policy's then owner, reported the change of trustee to American General on April 29, 2008. (*See* Sepanksi Decl., Exs. B and C.) American General lacked any authority to refuse or question Thornhill's appointment as Plan trustee.

**E. American General Terminates Thornhill's Appointment**

Approximately two years after he was appointed trustee, American General terminated its relationship with Thornhill. (Second Am. Compl., ¶ 28.) American General notified Thornhill of his termination by letter dated March 2, 2010. (Kasner Decl., Ex. B, p. 77:4–9; Ex. 24.) Durr Sexton, American General's former Chief Distribution Officer, testified that he approved Thornhill's termination because Thornhill was: 1) actively encouraging other American General producers to replace their clients' American General policies with non-American General products; and 2) making inappropriate and inaccurate statements about American General. (*Id.* at Ex. B, pp. 39:2–40:2.)

**F. Thornhill Steals $1.4 Million from the Plan**

More than seven years after he failed to repay his $400,000 loan to Donna Wills, two years after Donna Wills lost trust in him (Kasner Decl., Ex. D, p. 191:3–6), ten months after his implication in the Sand Hill Ponzi scheme, and six months after American General terminated his appointment, Thornhill, as Plan trustee, submitted a $600,000 loan request to American General on the Policy. (*Id.* at Ex. E, p. 98:25–99:14; Ex. 95.) Thornhill signed the request as the trustee

of the "Wills MGT LLC EMPL WELF BNFT Plan," and further submitted to American General documents, signed by Donna Wills, evidencing his authority to act as Plan trustee. (*Id.* at Ex. 95.)

American General processed the loan request, as it was contractually required to do, and issued a check to "WILLS MGMT LLC EMPL WELF BNFT PLN, GARY THORNHILL, TTEE" in the amount of $591,777.53. (Sepanski Decl., ¶ 4; Kasner Decl., Ex. 95.) Thornhill testified that he endorsed the check as Trustee, deposited the check in the Trust's bank account, and then systematically transferred funds to a personal account for his own personal use without the knowledge of Donna Wills, Wills Management, LLC, or American General. (Kasner Decl., Ex. E, pp. 99:2–100:5, 101:22– 104:19.) Lest there be any doubt, Thornhill stole these funds.

Months later, Thornhill submitted an $800,000 loan request on the Policy to American General. (Kasner Decl., Ex. E, p. 107:14–18; Ex. 97.) Again, Thornhill submitted the request as Plan trustee, and American General, processing the request pursuant to its contractual obligations, issued Thornhill an $800,000 check as Trustee of the Plan. (*Id.* at Ex. 97; Sepanski Decl., ¶ 4.) Thornhill again admitted that: (1) he took the $800,000 loan without Donna Wills' or Wills Management, LLC's knowledge; (2) American General did not know of the unauthorized nature of the disbursement request; (3) he deposited the funds into the Plan's account; and (4) over time, he transferred funds out of the Plan's account to his personal accounts and used those funds for reasons that "had nothing to do with" the Plan. (*Id.* at Ex. E, pp. 107:14–109:22.)

**G. The Theft is Discovered; Donna Wills Fails to Report Thornhill to Authorities**

In late 2012, Donna Wills' financial advisors discovered Thornhill's theft. (Second Am. Compl., ¶ 33.) The theft went undiscovered for more than a year, in part, because Thornhill forged the Policy's annual statement issued by American General to conceal the loans. (Kasner Decl., Ex. E, pp. 121:25–123:22.) American General was contacted regarding the theft and it placed an alert on the Policy to prevent Thornhill from further accessing the Policy's cash value. (*Id.* at Ex. A, pp. 46:8–10.) In investigating the allegations, Donna Wills admitted that American General did nothing wrong. (*Id.* at pp. 74:10– 77:24; Ex. 11.) Analyzing the situation, one of Donna's financial advisors noted: "In my opinion, I do not see that American General is negligent. They simply took direction to process a loan from the Plan Trustee, Gary Thornhill.

The breach of fiduciary duty happened when Gary withdrew funds from the Plan/Trust." (*Id.* at Ex. 107.)

American General reported Thornhill's actions to the California Department of Insurance. (Kasner Decl., Ex. A, pp. 68:12–74:18; Ex. 10.) In contrast, neither Donna Wills nor her team of attorneys and financial advisors ***ever*** reported Thornhill's theft of $1.4 million to any regulatory authority or law enforcement agency. (*Id.* at Ex. D, pp 10:1–17:8.)

When confronted about the withdrawals, Thornhill admitted to his malfeasance and signed a confession of judgment. (Kasner Decl., Ex. E., pp. 143:25–144:9; Ex. 36, WILLS000855–61.) The confession of judgment addressed not only his theft of $1.4 million from the Plan, but his failure to repay the: (1) $1 million investment Donna Wills lost in the Sand Hill Ponzi scheme; and (2) money one of Donna's children lost in the failed Sand Hill "investment." (*Id.* at Ex. 36, WILLS000855–61) Thornhill executed a settlement agreement requiring the repayment of the funds identified in Thornhill's confession of judgment plus the outstanding $400,000 note. (*Id.* at Ex. 36, ¶ 1(d).)

To repay his debts, Donna Wills and others have taken an interest in commissions Thornhill may earn from future insurance sales. (Kasner Decl., Ex. 36, ¶ 1(a).) Incredibly, Thornhill can continue to sell insurance in California as the Department of Insurance has not revoked his license. CAL. DEP'T OF INS., https://interactive.web.insurance.ca.gov/webuser/Licw_Indv_Det$.STARTUP?Z_INDV_ID=373576&Z_IL_LIC_NBR=0487423, last visited Oct. 23, 2015. To be clear, while claiming that American General should have warned them of Thornhill's potential for wrongdoing, Plaintiffs have now partnered with Thornhill to profit from his future insurance sales to others.

### H. The Policy's Status Today

The Plan was terminated (Kasner Decl., Ex. F, 104:7–15, 108:13-17), and the Policy was transferred to Donna Wills in May 2014 (*id.* at Ex. D, p. 34:5–24). Donna paid the Plan nothing for the Policy, which at the time of transfer held an accumulated cash value of approximately $2.8 million. (Sepanski Decl., Ex. D.) Donna Wills sold the Policy one month later to the 2014 Trust for $3,284,509 (to be paid at the time of her death and American General's payment of the death

benefit to the Trust). (Kasner Decl., Ex. F, p. 129:12–25; Ex. H.) As part of the Policy's sale, Donna Wills released all rights with respect to the Policy:

> [Donna Wills] shall not have any right, title, interest or incident of ownership whatsoever in or to any such policies of insurance purchased by or transferred to the Trustee, nor shall [Donna Wills] exercise any right, power, option, election, privilege or incident of ownership under any such policy. [Donna Wills] hereby relinquishes any and all rights, powers, options, elections, privileges and incidents of ownership in any such policies of insurance which are not assignable by the terms of such policies, if any, and will, at the request of the Trustee, execute all other instruments reasonably required to effectuate this relinquishment.

(Kasner Decl., Ex. G, pp. 21:18–22:14; Ex. 116, ¶ X(C).) SDTC serves as the 2014's Trust's trustee.

Donna Wills and SDTC, as trustee of the 2014 Trust, now seek to hold American General liable for Thornhill's misconduct. Their claims fail as a matter of law.

## III. <u>ARGUMENT AND AUTHORITIES</u>

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." A court should grant a motion for summary judgment "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Villa v. San Francisco Forty-Niners, Ltd.*, --- F. Supp. 3d ----, No. 5:12-cv-05481-EJD, 2015 WL 2250239, at *2 (N.D. Cal. May 13, 2015) (citing FED. R. CIV. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000)).

### B. Donna Wills Lacks Standing to Sue American General

A district court must ask "whether a plaintiff has suffered sufficient injury to satisfy the 'case or controversy requirement of Article III of the U.S. Constitution.'" *See In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1092 (N.D. Cal. 2013). To satisfy Article III standing requirements, a plaintiff must establish (1) an injury in fact, which is neither conjectural nor hypothetical, (2) causation, such that a causal connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. *Gutierrez v. State Farm Mut. Ins. Co.*, 5:11-cv-03111 (EJD), 2012 WL

398828, at *2 (N.D. Cal. Feb. 7, 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The trustee of a trust "has legal title to the assets of a trust and is therefore the real party in interest" to bring suit for damages sustained by the trust. *See Morris v. Choicepoint Servs., Inc.*, No. C-06-1224 SC, 2006 WL 2479122, at *3 (N.D. Cal. Aug. 28, 2006) (citing *Saks v. Damon Raike & Co.*, 7 Cal. App. 4th 419, 8 Cal. Rptr. 2d 869, 874 (1992)).

Donna Wills has suffered no injury from Thornhill's misconduct. She was denied no benefits from the Plan. Further, all rights under the Policy belong to the Policy owner or, derivatively, to the Policy's beneficiary. Here, for all relevant periods of time, the Policy's owner and beneficiary is and has been a trust. Donna Wills never paid Policy premiums (Kasner Decl., Ex. D, p. 48:15–18); she could not/cannot take loans against the Policy (*id.* at Ex. 35, WILLS000260); she could not/cannot assign interests in the Policy (*id.* at WILLS000264); she could not/cannot change the Policy's death benefit option (*id.* at WILLS000258); she could not/cannot surrender the Policy (*id.* at WILLS000259); and she expressly disclaimed all incidents of ownership associated with the Policy (*id.* at Ex. 116, ¶ X(C)). Put succinctly, Donna Wills, an individual, has sustained no injury in fact resulting from Thornhill's theft from the Plan, a distinct legal entity.

Damages arising from Thornhill's theft were suffered by the Plan alone. Indeed, in the unlikely event that American General is found liable for processing the loans requested by the Plan's duly appointed trustee, it would be required to pay damages only to the entity that sustained the losses. That entity is now the 2014 Trust, not Donna Wills. Accordingly, SDTC, as trustee for the 2014 Trust, the Policy's owner, is the real party in interest and Donna Wills lacks standing to sue American General. *See Morris*, 2006 WL 2479122, at *3.

**C. SDTC's Claims Fail as a Matter of Law**

All six of SDTC's claims fail as a matter of law.

1. *The Elder Abuse Claim Fails for Lack of Standing*

California's Elder Abuse Statute defines elder abuse as assisting in the "taking, secreting, appropriating, obtaining, or retaining, real or personal property [or any property right] of an elder or dependent adult by undue influence, as defined in Section 15610.70." CAL. WELF. & INST.

CODE § 15610.30(a)(3), (c). The taken property must be owned by the elder or by the elder's "representative," which is a conservator, trustee, or other representative of the estate of an elder or dependent adult. *Id.* at §§ 15610.30(c) and (d)(1).

SDTC alleges that American General assisted Thornhill in "taking, secreting, misappropriating and/or retaining $1.4 million from ***Donna Wills'*** Policy when she was 74 years of age." (Second Am. Compl., at ¶ 44 (emphasis added).) But as explained *supra*, Donna Wills did not own the Policy when Thornhill withdrew $1.4 million in loans—the Plan did. Indeed, Donna Wills, through D&H, disavowed any ownership interest in the Policy at the time of its issuance to obtain the $3 million tax shelter afforded to D&H under Section 419 of the Internal Revenue Code. Donna Wills again disavowed any interest in the Policy when she sold it to the 2014 Trust. Because SDTC is not an elder, and no real or personal property of Donna's (an elder) was taken, secreted, misappropriated, obtained, or retained as required by the Elder Abuse Statute, SDTC's financial elder abuse claim fails as a matter of law. *See generally Morris*, 2006 WL 2479122, at *3 (finding when trust assets are taken, elder abuse claims can survive a motion to dismiss when elder trustee was "real party in interest" for trust).

2. *American General Did Not Breach the Implied Covenant of Good Faith*

"It has long been recognized in California that every contract contains an implied covenant of good faith and fair dealing that neither party will injure the right of the other party to receive the benefits of the agreement." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012) (citing *Wolf v. Walt Disney Pictures & Tel.*, 162 Cal. App. 4th 1107, 1120, 76 Cal. Rptr. 3d 585 (2008)). Courts imply the covenant to "protect the express" promises of the contract and, as such, "the implied covenant will only be recognized to further the contract's purpose"; it will not be read into a contract to "prohibit a party from doing that which is expressly permitted by the agreement itself." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d at 1041 (internal citations omitted). As set forth by this Court last March:

> The obligations imposed by the covenant of good faith and fair dealing are not those set out in the term[s] of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged—fairly and in good faith. However, the contours of any party's

> duty under the covenant, as well as any conduct prohibited by the covenant, are determined by the purpose and terms of the contract at issue. Therefore, "in order to state a claim for breach of the implied covenant of good faith and fair dealing, the specific contractual obligation from which the imposed covenant of good faith and fair dealing arose must be alleged."

*Dunkel v. eBay Inc.*, 5:12-cv-01452 (EJD), 2014 WL 1117886, at *5 (N.D. Cal. Mar. 19, 2014) (all internal citations omitted).

Not only does SDTC's Second Amended Complaint fail to identify the "specific contractual obligation from which the imposed covenant of good faith and fair dealing" at issue arose, American General fully complied with the Policy's terms *and* acted in good faith at all times. When asked about American General's Policy obligations, Donna Wills testified that she was unaware of any promise made by American General in the Policy that it did not keep. (Kasner Decl., Ex. D, p. 26:18–21.)

The Policy provides no basis on which American General could refuse the Plan's selection of trustee. (Kasner Decl., Ex. 35, WILLS000261.) The Policy further requires American General to disburse a loan request made by the Policy owner. (*Id.* at WILLS000260.) Nothing under California law requires American General to breach the Policy (by not accepting a trust's designation of its trustee or by making the requested loans) so as not to breach an alleged duty of good faith and fair dealing. To so hold would be contrary to the Policy, the law, and common sense.

American General did not prevent SDTC, as trustee for the 2014 Trust, from receiving Policy benefits. Indeed, the Policy loan itself did not damage the Trust—it merely transferred the Trust's cash from the Policy to the Plan's bank account. Thornhill then stole the money from the Plan's account. American General upheld its contractual obligations and complied with the implied covenant of good faith and fair dealing. SDTC's claim must be dismissed as a matter of law.

3. *SDTC Can Identify No Legal Duty Breached by American General*

The "California insurance industry is heavily regulated." *See Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir. 2003) (internal citations omitted). The Insurance Code calls for the election of an insurance commissioner, who "shall perform all duties imposed upon

him or her by the provisions of [the Insurance Code] and other laws regulating the business of insurance [in California], and shall enforce the execution of those provisions of laws." *Id.* at § 12921. In turn, the insurance commissioner oversees the Department of Insurance (CAL. INS. CODE § 12906), which, itself, promulgates regulations to govern the insurance marketplace (CAL. DEP'T OF INS., http://www.insurance.ca.gov/0500-about-us/02-department/index.cfm (last visited Oct. 23, 2015)) in addition to statutes passed by the Legislature.

Without citation to a single case (because none exists) or to any one of the hundreds, if not thousands, of statutes and regulations governing the sale and marketing of insurance and conduct of insurers in California, SDTC requests this Court create new law and impose three novel duties on an insurer that do not presently exist. Those duties, as set forth in Paragraph 39 of SDTC's Second Amended Complaint, include: (1) an insurer's duty to investigate a change of trustee by a trust that owns a policy issued by the insurer; (2) an insurer's duty to investigate and/or question the validity of loans taken on a policy; and (3) a duty to warn a third party about the activities associated with a policy in which the third party has no direct or contingent interest.

a. Legal Standard Applicable to Negligence

To state a claim for negligence, the plaintiff must show (1) the existence of a legal duty of care, (2) breach of that duty, and (3) proximate cause resulting in that injury. *See McIntyre v. Colonies-Pac., LLC*, 228 Cal. App. 4th 664, 671, 175 Cal. Rptr. 3d 440 (2014) (internal citations omitted). "The existence of a legal duty of care, the breach of which may constitute negligence, is a question of law." *Delgado v. Am. Multi-Cinema, Inc.*, 72 Cal. App. 4th 1403, 1407, 85 Cal. Rptr. 2d 838 (1999) (internal citations omitted). Further, "creation of a legal duty is fundamentally a policy determination: 'The existence of a legal duty is a question of law which is simply an expression of the total sum of the policy considerations that lead a court to conclude that a particular plaintiff is entitled to protection.'" *Id.* (internal citations omitted).

b. American General Lacked Authority to Prevent A Trustee Change

First, the Second Amended Complaint suggests that American General should have questioned Wills Management, LLC's decision to appoint Thornhill as the Plan's trustee. (*See, e.g.*, Second Am. Compl., ¶¶ 39(b), (d).) The Policy conveys no such authority and the law

imposes no such duty. Here, the Policy requires American General to process ownership changes as requested. (Kasner Decl., Ex. 35, WILLS000261.) Nothing in the Policy or the law permits American General to question the change of a policy owner, much less the appointment of a new trustee. If the appointment was inappropriate because of a conflict of interest involving Thornhill (and no law or legal duty says it was), American General's only recourse was to terminate Thornhill's appointment—which it did before Thornhill submitted his $1.4 million in loan requests.[3] (*Id.* at Ex. 24.)

Taking into account the policy considerations of creating a new duty (as would be required), the Court cannot find American General owed a duty under circumstances in which American General had no way to prevent Thornhill's appointment as trustee. Plaintiffs are creating new legal duties to conveniently fit the circumstances and prosecute claims that are otherwise unsupportable under California law.

c. The Policy Obligated American General to Process Loan Requests

SDTC also faults American General for processing Thornhill's disbursement requests. (Second Am. Compl., ¶ 39(a).) With respect to the loans, the Policy provides that the owner may borrow from American General, "while [the Policy] is in force, an amount which is equal to or less than the policy's loan value." (Kasner Decl., Ex. 35, WILLS000260.) Further, the Plan's documents confirm that the Plan "released" American General from "inquiring into the decision or authority" of the Plan's trustee, Thornhill. (*Id.* at Ex. 65, ¶ 8.17.) Again, if the Court were to impose a duty to interfere, American General would be placed in the impossible position of

---

[3] SDTC's Second Amended Complaint vaguely suggests the appointment of Thornhill as trustee also may have been inappropriate given American General's knowledge of Thornhill's "untrustworthiness." (Second Am. Compl., ¶ 39(b).) SDTC's allegations are baseless and irrelevant since Donna Wills possessed her own knowledge of Thornhill's misconduct. By way of example only, Donna Wills knew Thornhill was untrustworthy because before she, on behalf of Wills Management, LLC, undertook steps to appoint him as the Plan's trustee, he failed to repay the $400,000 he had borrowed from her. (*See* Kasner Decl., Ex. E., pp. 72:20–74:23; Ex. 74.) Further, Donna Wills testified that she lost faith in Thornhill by August 2009 because of his "poor handling of [her] affairs"; and nearly a year before he took disbursements from the Policy, Donna Wills knew, as a participant to litigation, that Thornhill had been alleged to have been complicit in the Sand Hill Capital Ponzi scheme, which cost Donna Wills a $1 million investment. (*Id.* at Ex. D, p. 191:3-6; Exs. 44 and 60.)

choosing between violating the Policy or breaching a common law duty. A duty premised on such an inherent conflict cannot exist as a matter of law.[4]

In any event, whether a duty exists is irrelevant; American General performed the necessary diligence when it received the loan requests. For instance, with respect to the October disbursement, American General reviewed the Policy's chain of title to confirm that Thornhill, as Policy trustee, possessed the requisite authority to borrow funds from the Policy. (Sepanksi Decl., ¶ 4.) American General also confirmed the signatures on Thornhill's disbursement requests, confirmed that no ownership changes had taken place in the prior six months, confirmed that no loans had been taken in the last six months, and obtained approval from two managers. (*Id*.) All of this was done pursuant to the Company's internal processes and procedures, and that diligence confirmed Thornhill possessed actual authority to apply for the loans. (*Id.*) Even Donna Wills' financial advisor agreed. (Kasner Decl., Ex. 107.) SDTC's negligence claim fails.

d. <u>American General Owed no Duty to Warn</u>

Finally, SDTC urges the Court to adopt a duty requiring an insurer to notify an insured, a third party to the insurance contract, of certain policy-related activities. (Second Am. Compl., ¶¶ 39(c) and (e).) Grasping at straws, SDTC bootstraps allegations in the Second Amended Complaint related to Donna Wills to assert a claim on Donna Wills' behalf. As set forth above, Donna Wills has no standing to bring such a claim, and SDTC cannot skirt her lack of standing to raise that claim as its own.

---

[4] Were such a duty to exist, how does an insurer comply with it? At what point is a contractually-permitted action by a duly authorized trustee unreasonable? Given the loan history, would American General be required to label a $50,000 loan request as unreasonable? $100,000? $250,000? What's the ratio of past loans to requested loan that requires the insurer to act? Does the ratio apply to a first loan? What about the frequency of loans? Is it unreasonable for an insurer to process loans on a semi-annual or annual basis? And what act is required of the insurer? Outright denial? Inquiry of the trustee? Is the insurer required to give notice to those outside the contractual relationship? Who and on what authority? If notice must be provided to the insured, how is the insurer supposed to locate the insured on a 12-year old policy? And does that notification not breach the policy owner's right to privacy? In short, because duty is a question of law, exactly how would SDTC have this Court instruct the jury on what the newly-minted duty is and what it requires?

Regardless, the Policy creates no obligations between American General and Donna Wills, and American General is aware of no such authority giving rise to a duty to warn. To the contrary, Judge Koh of the Northern District of California expressly declined to adopt such a duty in the insurer/insured context in 2011. *See Wayne Merritt Motor Co. v. New Hampshire Ins. Co.*, 11-cv-01762 (LHK), 2011 WL 5025142, at *6 n.4 (N.D. Cal. Oct. 21, 2011). Likewise, courts from other jurisdictions have reached similar conclusions. *See, e.g.*, *Rizzo v. State Farm Ins. Co.*, 305 P.3d 519, 528–29 (Idaho 2013) (declining to require a duty to warn, because the insurer's duties "are defined by the insurance contract and the insurance contract does not require [the insurer] to warn insureds of possible health hazards arising out of a property damage claim."); *Thrivent Fin. for Lutherans v. Strojny*, 882 F. Supp. 2d 260, 267 (D. Mass. 2012) (finding "nothing in the relationship between the insured and the insurer . . . creates a 'heightened duty of disclosure'") (internal citations omitted); *see also Gaitan v. Mortg. Elec. Registration Sys.*, EDCV09-1009 (VAP) (MANx), 2009 WL 3244729, at *9 (C.D. Cal. Oct. 5, 2009) (noting under California law, as a general rule, lenders owe no duty to borrower "when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money").

Here, American General and Donna Wills were not in any form of a business or other contractual relationship at the time of the theft. Under what authority then should American General have warned Donna Wills, and about what should American General have warned her?[5]

[5] SDTC says that American General owed a duty to warn Donna Wills about Thornhill due to his involvement in five lawsuits between August 1992 and March 2010. But, again, if duties are going to be created out of whole cloth, how exactly are those duties defined. Is a litigant presumed liable until proven otherwise? Must there first be a finding of wrongdoing? Thornhill was completely exonerated in one of these lawsuits—is an insurer required to give a second notice when an agent is cleared? How many lawsuits in what period of time prompts the notice requirement? What does the notice look like? Can SDTC name one other life insurer that provides such a notice? The State of California still allows Thornhill to sell insurance to its citizens even though American General reported Thornhill's theft—does California law impose some greater duty to warn strangers to the insurance contract than the Department of Insurance? Can this duty exist when a plaintiff herself was named in litigation involving the alleged wrongdoer? Again, when the Court instructs the jury on a duty to warn due to other litigation, what does the instruction look like and on what authority is the instruction based?

American General's relationship with Donna Wills was more attenuated than an arm's length transaction, and American General owed her no duties as a matter of law.

To impose such a duty here requires the Court to ignore the very essence of life insurance. Life insurance is imbued with the characteristics of property. *See Grigsby v. Russell*, 222 U.S. 149, 156 (1911) ("[s]o far as reasonable safety permits, it is desirable to give to life insurance policies the ordinary characteristics of property"). As long as the requisite insurable interest existed at the time of issuance, a life insurance policy can be sold to third party strangers. *See id.* The entire life settlement industry exists because a life insurance policy can be bought and sold by strangers. *See generally Griswold v. Coventry First LLC*, 762 F.3d 264, 265 (3d Cir. 2014) (describing life settlement as the sale of a life insurance policy in exchange for the policy's ownership and subsequent death benefit). To impose a duty on the insurer to warn the insured, who has neither right nor power under a policy to do anything as a result of the warning, about the activity of the policy owner, would place the insurer at odds with its counter-party to the life insurance contract. Such an outcome is legally untenable. As such, SDTC cannot point this Court to any authority imposing a duty to warn the insured or any third party to the policy.

SDTC is simply making up duties through reverse-engineering that have no basis under California law. The Court should decline SDTC's invitation to usurp the power of the Department of Insurance and the Legislature to impose duties that do not currently exist and that would be impossible to administer.

4. *SDTC's Aiding and Abetting Causes of Action are Legally Deficient*

Citing *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 846, 33 Cal. Rptr. 2d 438 (1994), this Court recently pronounced the standard for one who "aids and abets an intentional tort." *Marble Bridge Funding Grp., Inc. v. Liquid Capital Exch.*, No. 5:15-cv-00177 (EJD), 2015 WL 5654844, at *3 (N.D. Cal. Sept. 25, 2015). Liability may be imposed for aiding and abetting if a person or entity knows the other wrongdoer's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act. *See Marble Bridge*, 2015 WL 5654844 at *3 (internal citations to *Saunders* omitted). When seeking liability on this ground, the plaintiff must prove the defendant had "actual knowledge" of the specific primary wrong for which the

defendant substantially assisted. *See Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145, 26 Cal. Rptr. 3d 401 (2005) (internal citations omitted). If unable to prove "actual knowledge," the plaintiff may proceed if it is shown that the defendant gave substantial assistance to another in accomplishing a tortious result and the defendant's own conduct, separately considered, constitutes a breach of duty to the plaintiff. *See Marble Bridge*, 2015 WL 5654844 at *3 (internal citations to *Saunders* omitted).

Because SDTC does not assert that American General had actual knowledge of Thornhill's theft, it must prove that American General breached some independent duty to SDTC. But as American General explained in its negligence argument, American General did not breach any duty to SDTC. SDTC's aiding and abetting cause of action fails too.

5. *SDTC Has Not Alleged a Violation of the Unfair Competition Law*

California's Unfair Competition Law (the "UCL"), as codified by CAL. BUS. & PROF. CODE § 17200, et seq., defines unfair competition as any "unlawful, unfair or fraudulent business act or practice." Accordingly, liability attaches when a defendant's conduct amounts to an unlawful, unfair, or fraudulent business act or practice. SDTC alleges American General violated both the unlawful and unfair, but not the fraudulent, prongs of the UCL.

a. SDTC Has Not Alleged Permissible Damages Under the UCL

Two types of damages are recoverable under the UCL: (1) injunctive relief; and (2) restitution. *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 192 Cal. Rptr. 3d 881, 891 (2015) (internal citations omitted). "'[I]njunctions are the primary form of relief available under the UCL to protect consumers from unfair business practices,' while restitution is a type of 'ancillary relief.'" *Id.* (internal citations omitted). Because SDTC seeks no injunctive relief in its Second Amended Complaint, the only remedy available to SDTC then is restitution.

Restitution for violation of the UCL "is confined to restoration of any interest in money or property, real or personal, which may have been ***acquired*** by means of such unfair competition. A restitution order against a defendant thus requires that both money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *In re Tobacco Cases II*, 192 Cal. Rptr. 3d at 895 (emphasis in original) (internal citations and quotation

marks omitted). Under California law then, American General cannot be subject to a claim of restitution, and *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013) proves instructive in this regard.

In *Asghari*, a class of plaintiffs brought suit against Volkswagen for failure to disclose a defect associated with the amount of oil required by a particular engine model. 42 F. Supp. 3d at 1312. The class brought a litany of claims against Volkswagen, including claims for violating the UCL, which Volkswagen moved to dismiss. *Id.* at 1313. Volkswagen argued that because one plaintiff purchased her vehicle used from a third party, the UCL claim failed "since [Volkswagen] never acquired the money . . . paid to obtain the vehicle." *Id.* at 1324. The Court agreed with Volkswagen and dismissed the UCL claim because the particular plaintiff failed to allege facts indicating that Volkswagen obtained the plaintiff's money or property, or that Volkswagen otherwise possessed funds belonging to the plaintiff. *Id.* at 1324–25.

Here, just like *Asghari*, Plaintiffs do not allege that American General acquired or took anything from SDTC. Instead, SDTC confirms that ***Thornhill*** stole funds from the Plan. Because restitution requires SDTC to prove that American General withheld property belonging to it, the UCL claim fails as a matter of law. *Asghari*, 42 F. Supp. 3d at 1324–25.

b. <u>American General Did Not Act Unlawfully</u>

The unlawful prong of the UCL borrows "violations of other laws and treats them as independently actionable." *See Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256, 1265 (N.D. Cal. 2014) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837, 51 Cal. Rptr. 3d 118 (2006)). SDTC has alleged American General violated two separate statutes, which in turn create liability under the UCL. Even a cursory review of the statutes cited by SDTC in its Second Amended Complaint, however, show SDTC's UCL claim fails as a matter of law.

First, SDTC alleges American General engaged in unlawful conduct when it committed financial elder abuse on Donna Wills. (Second Am. Compl., ¶ 63.) But as already shown above, no elder abuse occurred here. Second, SDTC pleads that American General, "as a financial institution," engaged in unlawful conduct when it failed to report "suspected financial abuse of an

elder" under CAL. WELF. & INST. CODE § 15630.1. (Second Am. Compl., ¶ 63.) By its own terms, that statute applies only to a "financial institution," as defined by the statute:

> (1) a depository institution, as defined in Section 3(c) of the Federal Deposit Insurance Act (12 U.S.C. § 1813(c));
>
> (2) An institution-affiliated party, as defined in Section 3(u) of the Federal Deposit Insurance Act (12 U.S.C. § 1813(u)); or
>
> (3) A federal credit union or state credit union, as defined in Section 101 of the Federal Credit Union Act, including, but not limited to, an institution-affiliated party of a credit union, as defined in Section 206(r) of the Federal Credit Union Act (12 U.S.C. § 1786(r)).

WELF. & INST. CODE § 15630.1(b)(1)-(3). Plainly, American General does not meet the definition of a financial institution. SDTC's UCL claim fails as a matter of law.

c. American General Did Not Treat SDTC Unfairly

While alleging and proving a claim for unlawful conduct is a fairly straightforward exercise, California appellate courts have failed to agree "on how to define an 'unfair' act or practice in the context of a UCL consumer action." *Rubio v. Capital One Bank*¸ 613 F.3d 1195, 1204 (9th Cir. 2010) (internal citations omitted). No matter the applicable test, nothing about American General's conduct is unfair.

SDTC asserts it was unfair for American General to terminate Thornhill's American General appointment in 2010 while permitting Thornhill to remain as the Policy's trustee. (Second Am. Compl., ¶ 64.) Not only was American General powerless from terminating Thornhill as trustee (the Plan, which American General was a stranger to, controlled the appointment), there is no nexus between Thornhill's termination and the conduct of which SDTC complains in this lawsuit.

American General terminated Thornhill for soliciting other American General producers and/or brokers to replace American General policies with non-American General products. (Kasner Decl., Ex. B, p. 39:2–40:2.) Further, Thornhill had never been accused of stealing from an American General policy nor had he been accused of entering into positions of conflicts of interests. American General's termination of Thornhill did not relate in any way to Donna Wills,

the Policy, and/or the Plan. Regardless, even if Thornhill was terminated due to his involvement in other litigation, SDTC can cite to no duty under California law that requires an insurer to notify third parties to an insurance contract of the reasons for the termination of a producer relationship.

## IV. CONCLUSION

For each of the foregoing reasons, American General respectfully requests the Court grant its Motion for Summary Judgment in its entirety and dismiss each of Plaintiffs' claims.

Date: October 29, 2015

EDISON, MCDOWELL & HETHERINGTON, LLP

By: /s/ David T. McDowell
Jodi K. Swick
David T. McDowell*
Jessica L. Wilson*
Andrew R. Kasner*

.

ATTORNEYS FOR AMERICAN GENERAL LIFE INSURANCE COMPANY
* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2015, a true and correct copy of the foregoing, with all attachments, has been filed with the Court's CM/ECF system, which will provide electronic notice and copies of this filing to all counsel of record as follows:

**Counsel for Plaintiffs:**
Maria S. Bellafronto
Aleksandr Korzh
70 South First Street
San Jose, California 95113
mbellafronto@hopkinscarley.com
akorzh@hopkinscarley.com

**Counsel for Third Party Defendants:**
Steven R. Levy
Law Office of Steven R. Levy
17670 Woodland Avenue
Morgan Hill, California 95037
stevelevy@verzion.net

By: /s/ David T. McDowell
David T. McDowell