Maria S. Bellafronto, Bar No. 161994
mbellafronto@hopkinscarley.com
Aleksandr Korzh, Bar No. 286613
akorzh@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S. First Street
San Jose, CA 95113-2406

***mailing address:***
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorney for Plaintiffs SOUTH DAKOTA TRUST COMPANY as Trustee of the Donna Wills 2014 Irrevocable Trust, and DONNA M. WILLS, an individual

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTH DAKOTA TRUST COMPANY, Trustee of the Donna Wills 2014 Irrevocable Trust, and DONNA M. WILLS, an individual,<br><br>Plaintiffs<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. CV 13 05860 EJD<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>DATE: December 3, 2015<br>TIME: 9:00 a.m.<br>COURTROOM: Courtroom 4, 5th Floor<br>JUDGE: Edward J. Davila |

## I. INTRODUCTION

American General's contention that the fraudulent loans did not cause financial harm to Donna Wills falls flat. The following relevant facts remain undisputed: (1) the funds stolen from the Policy harmed the Policy (given the undisputed risk of a premature lapse) and put Ms. Wills' $3.2 million promissory note at risk; and (2) Ms. Wills is the only person who can prevent the collapse of the Policy by replenishing the funds.[1] In fact, as set forth in Ms. Wills' supplemental declaration, she recently loaned South Dakota Trust Company ("SDTC") $1,867,902.94 to completely pay off the fraudulent loans on the Policy. This amount includes all interest that has accrued on the loans. Therefore, Ms. Wills has sustained direct economic harm by having to pay back the fraudulent loans to prevent further harm to the Policy.

American General attempts to avoid the very real harm that Ms. Wills has suffered by arguing that her harm is too speculative because she may pass away before the Policy lapses or the 2014 Trust could choose to surrender the Policy. American General's "what if" scenarios are even more speculative than Plaintiffs' contentions and, more importantly, ignore the numerous authorities cited by Plaintiffs holding that increased risk of future economic harm is sufficient to confer standing. Here, the very real increased risk of harm is indisputable and supported by testimony from Ms. Wills' financial advisors (Roger Cregg and David Canaday) and Plaintiffs' insurance expert, Richard Weber. These witnesses uniformly testified that the stolen funds have placed the Policy in jeopardy and needed to be repaid. Given that Ms. Wills has now rescued the Policy from the snowballing negative effects of the misappropriated funds, her harm is real and she has standing to sue. Accordingly, Plaintiffs' motion for summary judgment should be granted.

[1] Ironically, although American General's opposition is largely based on the contention that Ms. Wills' damages are speculative, it asserts that Gary Thornhill *might* repay the fraudulent loans himself. However, Mr. Thornhill has not repaid any portion of the fraudulent loans to date and American General provides no evidence supporting its contention that he may do so in the future.

## II. STATEMENT OF RELEVANT FACTS

### A. Donna Wills Loaned $1,867,902.94 To SDTC In Order To Repay The Loans, Thereby Protecting The Policy And Stopping Interest From Accruing

In order to stop the accrual of interest on the fraudulent loans outstanding on the Policy, and to prevent the risk of premature lapse of the Policy, at the advice and recommendation of her financial advisors, on November 12, 2015, Donna Wills loaned SDTC the sum of $1,867,902.94. (Supplemental Declaration of Donna M. Wills ["Supplemental Wills Decl."], ¶¶ 2, 3, Ex. A). The following day, November 13, 2015, SDTC wired the funds to American General to pay off the fraudulent loans. (*Id*.).

### B. Thornhill Misappropriated Funds From The Policy, Not The Plan

It remains undisputed that "the loans were taken *against the Policy*," and "Thornhill has admitted that *he took these loans for his own personal use and benefit*." (*See* RJN, Exh.'s 1, 2 [SAC and Answer], at ¶¶ 30-33, emphasis added). In a desperate attempt to divorce itself from Thornhill's misappropriation of funds in this case, American General argues that the money was stolen from the "Plan," and not the "Policy" it issued to Plaintiffs. Not only is this an untrue statement (because the loans were taken against the Policy, not the Plan); it is irrelevant to the issues in this motion relating to standing.

## III. ARGUMENT

### A. Donna Wills Has Standing To Sue American General Because She Repaid The Outstanding Loans On The Policy

As set forth in Ms. Wills' supplemental declaration, on November 12, 2015, she loaned SDTC the necessary funds to repay the outstanding loan balance, $1,867,902.94. (*Id*.).[2] By doing so, she prevented the escalating risk of harm to the Policy, as well as mitigating the risk that her $3.2 million promissory note would not be repaid. Thus, under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), Ms. Wills is a party with a "personal stake in the outcome" of this dispute, and therefore she has standing.

[2] SDTC then paid American General this sum on November 13, 2015 to protect the Policy. (*Id*.)

**B. The Harm To Donna Wills Is Not Speculative Because She Repaid The Loans**

Ms. Wills did what her financial advisors recommended she do to protect the Policy on her life and ensure her family will recover the $15.4 million death benefit upon her death – she loaned her 2014 Trust the money required to place the Policy back in the position it would have been in had there been no misappropriation of the funds. (Supplemental Wills Decl., ¶¶ 2-3). These facts belie American General's assertion that Donna Wills' harm is an "academic exercise in the conceivable." Donna Wills' harm is real. Rather than risk the Policy collapsing, her $3.2 million Promissory Note disappearing, and her estate being saddled with millions of dollars in estate taxes, she spent almost two million dollars of her own money to prevent harm to the Policy. Thus, the argument that her loss is "speculative" fails.

Even if Ms. Wills had not chosen to repay the fraudulent loans on the Policy, she nevertheless sustained an injury in fact for standing purposes under Article III, given the "likely," "threatened" or "sufficiently concrete and imminent" harm she was facing. American General completely ignores the cases Plaintiffs cited holding that an increased risk of future financial harm is sufficient to meet the injury-in-fact prong of the standing analysis. Specifically, American General did not even attempt to address the holdings in *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010), (standing can exist when there is an *increased risk of likely harm*), *Clinton v. City of New York*, 524 U.S. 417, 431 (1998) (contingent liability may also constitute injury in fact where it has actual and imminent consequences), *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947-948 (9th Cir. 2002) (threatened injury constitutes "injury in fact") and *Cent. Arizona Water Conservation Dist. v. U.S. E.P.A.*, 990 F.2d 1531, 1537-1538 (9th Cir. 1993) (sufficiently concrete and imminent economic injury confers standing even if the precise amount of economic harm is "not readily determinable"). Accordingly, even if Ms. Wills had not chosen to repay the loans, she would have standing. At this point, however, the "speculative harm" issue is moot given that Ms. Wills paid nearly two million dollars to prevent further harm to the Policy. She has sustained actual economic harm and, therefore, has standing.

**C. American General Does Not Dispute That Repayment Of The Fraudulent Loans Was The Only Way To Protect The $15.4 Million Death Benefit The Wills Bargained For And Restore The Policy To The State It Was In Prior To The Fraudulent Loans**

To avoid admitting Ms. Wills suffered an injury in fact, American General tries to dispute the likely harm to the Policy from the missing funds in the Cash Value by stating that Donna Wills might pass away before the Policy lapses or that her 2014 Trust might choose to surrender the Policy. (Defendant's Responsive Separate Statement in Response to Plaintiffs' Motion for Partial Summary Judgment ("Responsive Separate Statement"), p. 4). Specifically, American General disputes the following facts set forth by Plaintiffs:

- If the unauthorized loans are not repaid, the Policy will remain in force for a shorter period of time than if the unauthorized loans were not made. (Weber Decl., ¶ 5, Bellafronto Decl., Exh.'s A-B, [Cregg Depo., Canaday Depo.]);
- In order to restore the Policy to remain in force for the same amount of time it would be in force had the fraudulent loans not been made, the fraudulent loans must be repaid. (Weber Decl., ¶ 8).

(*Id.*) However, American General disputes these facts without referring to any *evidentiary support whatsoever*. It merely claims that Ms. Wills could pass away or the 2014 Trust could surrender the Policy, and therefore no harm would result to Donna Wills. These events, however, are even more speculative and uncertain than the grave risk of harm to the Policy, as confirmed by the Declaration of Richard M. Weber and the testimony of Roger Cregg and David Canaday. These witnesses unambiguously stated that the only way to keep the policy afloat for the same amount of time it would had the fraudulent loans not been taken out was to repay the fraudulent loans with interest.[3] Plaintiffs' evidence about the Policy lapsing prematurely remains

[3] *See* Declaration of Richard M. Weber, filed previously with Plaintiffs' Motion where he used modelling software to project when the Policy would lapse based on the outstanding loans as of 2015, assuming a 5.5% crediting rate under two scenarios: (1) including the effect of the fraudulent loans; and (2) without the fraudulent loans. Based on his models, as depicted by the charts he attached to his declaration, Mr. Weber found that the Wills' Policy would lapse approximately 4 – 5 years earlier than it would had the loans not been made. (Weber Decl., ¶ 5). *See also*, Roger Cregg's testimony that Morgan Stanley's concern was "the amount of money that had been borrowed out of the policy, plus the interest that was accruing on the policy, could have an adverse effect on the length of the policy and *whether it would actually be here at Donna's death*." (Bellafronto Decl., Cregg Depo., Ex. A, 79:19-82:4, emphasis added). Mr. Canaday's testimony is similarly uncontroverted: "No additional premiums were being paid, and the amount

uncontroverted.

Instead, American General summarily argues, without any supporting evidence, that this risk of collapse is "too speculative," but it provides no legal authorities to support its position. Apparently, American General believes its unfounded assumptions that Ms. Wills, at 78 years old, could pass away soon or that the Policy could be surrendered, are somehow more certain than the conclusions reached by Ms. Wills' financial advisors and insurance experts – that there is an undeniable risk of the Policy prematurely lapsing if the stolen funds are not repaid. In the words of Mr. Cregg, Ms. Wills' insurance specialist at Morgan Stanley, "to keep the policy healthy, meaning keep the policy projections as they were originally put into place, she [Donna Wills] would have to put money back into the policy." (Bellafronto Decl., Cregg Depo., Ex. A, 81:19-22).

It remains undisputed that replenishing the stolen funds was the only way to prevent the increased risk of catastrophic loss to the Policy which Donna and Richard Wills bargained for when the Policy was originally purchased as part of their estate and financial planning. American General has not met its burden to rebut the undisputed facts with any evidence establishing that Donna Wills has not suffered an injury in fact. Therefore, Plaintiffs' motion for partial summary judgment should be granted.

**D. Donna Wills' Harm Is Fairly Traceable To American General's Actions**

American General correctly cites the Supreme Court "causation" test for standing purposes: that there should be a "connection between the injury and the conduct complained of – the injury has to be 'fairly traceable' to the challenged action of the defendant and not injury that results from the independent action of some third party not before the court." *Lujan, supra,* 504 U.S. at 560. However, rather than concede the numerous allegations in the Second Amended Complaint ("SAC") demonstrating that American General's actions and inactions are "fairly traceable" to Donna Wills' harm (including her spending nearly two million dollars to repay the

---

of loans that had come out of the policy was going to put the policy in jeopardy where it would lapse at too young of age." (*Id*., Canaday Depo., Ex. B, 32:7-19). Mr. Canaday specifically felt the policy could lapse when Ms. Will was "somewhere around 80 to 90 or in her early 90's." (*Id*.).

stolen funds), American General erroneously states that any harm to Ms. Wills resulting from the Policy collapsing and her promissory note not being repaid, would be traceable to a third party, namely her 2014 Trust.

American General argues that the potential for Ms. Wills' promissory note being unpaid due to the collapse of the Policy "is the crux of Donna Wills' failure to have standing in this case." (Opposition, p. 9). It then concludes that its actions are not traceable to Ms. Wills because either the loan will be repaid (if the Policy does not collapse) and Ms. Wills will not be harmed, or, if the Policy does collapse, Ms. Wills' would have a claim against the 2014 Trust only for its failure to pay under the promissory note.

As an initial matter, American General ignores that the sole root cause of the increased risk that her loan to the 2014 Trust would not be repaid – the fraudulent loans. Moreover, American General's analysis is flawed because Ms. Wills has eliminated the risk of harm to the Policy by paying off the loans. Therefore, the focus of her injury is no longer solely *the potential for her $3.2 million promissory being extinguished*. Instead, the crux of her standing argument is that *she had to pay SDTC over $1.8 million to prevent that loss*. American General ignores this material fact, and all of the allegations set forth in the SAC, which if taken to be true, demonstrate that American General's negligence and failure to adhere to its own policies and practices in the insurance industry, caused Ms. Wills' harm. Thus, Plaintiffs have established the causation element for standing purposes, and this Court should grant summary judgment in favor of Plaintiffs on American General's twenty-second and twenty-fifth affirmative defenses challenging standing.

**E. A Favorable Verdict Will Redress Donna Wills' Injury**

In its Responsive Separate Statement, American General admits Plaintiffs' undisputed fact that "Repaying the outstanding loans in full will eliminate both the negative effects of the interest that continues to accrue on the fraudulent loans and the potential premature lapse of the Policy." (Responsive Separate Statement, p. 5). However, it denies that this fact supports Plaintiffs' claim that a favorable decision on the merits will redress Ms. Wills' harm because it claims no harm has befallen Donna Wills and she has no rights to the Policy. First, as set forth

above, Ms. Wills suffered direct harm because she paid nearly two million dollars to prevent the Policy from prematurely lapsing. Second, having no rights to the Policy, in and of itself, does not mean she did not suffer an injury. Rather, a favorable decision in this case will sufficiently redress the harm to Ms. Wills because an award to Ms. Wills in the amount of $1,867,904.92 will repay her for the money she used to protect the Policy from being harmed.

### F. Donna Wills And SDTC Are Not Seeking Double Recovery Of The Same Compensatory Damages

American General's argument regarding double recovery misses the mark. Plaintiffs are *not* seeking double recovery. American General is flat out wrong when it states that "both Plaintiffs seek recovery of the money stolen by Thornhill."[4] Plaintiffs are seeking to recover a total amount of damages against American General that will compensate each plaintiff for its individual harm. How such damages are ultimately allocated between the Plaintiffs at the time of trial, however, is wholly irrelevant to the issue of standing raised in this motion.

## IV. CONCLUSION

For the foregoing reasons, American General is unable to rebut Plaintiffs' contention that Donna Wills was harmed as a result of the misappropriation of the funds from the Policy. As a result, Donna Wills has standing to bring the causes of action alleged against American General. Accordingly, Plaintiffs' partial motion for summary judgment against American General's 22nd and 25th affirmative defenses should be granted.

Dated: November 19, 2015

HOPKINS & CARLEY
A Law Corporation

By: */s/ Maria S. Bellafronto*
Maria S. Bellafronto
Aleksandr Korzh
Attorneys for Plaintiffs

---

[4] American General argues that both Plaintiffs seek "the same recovery of the same damages for the same alleged wrongdoing." (Opposition, p. 7). In support of this argument, American General relies on Ms. Wills' testimony at a point when American General's counsel quizzed her on what damages she is asserting in this case. However, Ms. Wills' testimony is irrelevant and incomplete on this issue. Obviously, Ms. Wills, a 78 year old plaintiff, relies on her counsel to argue what her legal damages are in this relatively complicated case.