Jodi K. Swick, No. 228634
**EDISON McDOWELL & HETHERINGTON LLP**
1 Kaiser Plaza, Suite 340
Oakland, CA 94612
Telephone: 510.628.2145
Facsimile: 510.628.2146
Email: jodi.swick@emhllp.com

David T. McDowell (admitted *pro hac vice*)
Jessica L. Wilson (admitted *pro hac vice*)
Andrew R. Kasner (admitted *pro hac vice*)
**EDISON McDOWELL & HETHERINGTON LLP**
3200 Southwest Freeway, Suite 2100
Houston, TX 77027
Tel: 713.337.5580
Fax: 713.337.8850
Email: david.mcdowell@emhllp.com
jessica.wilson@emhllp.com
andrew.kasner@emhllp.com

Attorneys for Defendant/Third-Party Plaintiff
AMERICAN GENERAL LIFE INSURANCE COMPANY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

SOUTH DAKOTA TRUST COMPANY, trustee of the Donna Wills 2014 Irrevocable Trust II, and DONNA M. WILLS, an individual,

Plaintiffs,

vs.

AMERICAN GENERAL LIFE INSURANCE COMPANY, and DOES 1-10, Inclusive,

Defendants,

and

RELATED THIRD PARTY COMPLAINT

Case No. C-13-05860 EJD

**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**FED. R. CIV. P. 56**

Date: December 3, 2015
Time: 9:00 a.m.
Courtroom: 4, 5th Floor
Judge: Hon. Edward J. Davila

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Fail to Demonstrate Donna Wills Possesses Standing ..... 1

B. The Elder Abuse Claim Cannot Proceed ..... 3

1. The Elder Abuse Statute Explicitly Precludes the Elder Abuse Claim ..... 4

2. Plaintiffs Concede that no Damages Exist for the Elder Abuse Claim ..... 5

C. SDTC's Remaining Claims Fail as a Matter of Law ..... 6

1. SDTC Concedes its Implied Covenant Claim Fails ..... 6

2. SDTC's Negligence Claim Fails ..... 7

a. The Court Has Not Determined that a Duty Exists ..... 7

b. SDTC Cannot Articulate a Duty Owed ..... 8

c. Donna Wills' Personal Knowledge ..... 10

3. The Aiding and Abetting Claims Fail ..... 11

4. The UCL Claim is Irredeemable ..... 11

III. CONCLUSION ..... 13


## TABLE OF AUTHORITIES

**Cases**


*Delgado v. Am. Multi-Cinema, Inc.*,
72 Cal. App. 4th 1403, 85 Cal. Rptr. 2d 838 (1999) ..... 10

*Dunkel v. eBay, Inc.*,
5:12-cv-01452 (EJD), 2014 WL 1117886 (N.D. Cal. Mar. 19, 2014) ..... 7

*In re Apple In-App Purchase Litig.*,
855 F. Supp. 2d 1030 (N.D. Cal. 2012) ..... 7

*In re Estate of Lowrie*,
118 Cal. App. 4th 220, 12 Cal. Rptr. 3d 828 (2004) ..... 5

*In re Tobacco Cases II*,
240 Cal. App. 4th 779, 192 Cal. Rptr. 3d 881 (2015) ..... 12, 13

*In re Tower Park Properties, LLC*,
803 F.3d 450 (9th Cir. 2015) ..... 3

*King v. Nat'l Gen. Ins. Co.*,
--- F. Supp. 3d ----, No. 15-cv-00313 (DMR),
2015 WL 5440826 (N.D. Cal. Sept. 15, 2015) ..... 2

*Laabs v. S. Cal. Edison Co.*,
175 Cal. App. 4th 1260, 97 Cal. Rptr. 3d 241 (2009) ........ 9

*Morris v. Choicepoint Servs., Inc.*,
No. C-06-1224 SC, 2006 WL 2479122 (N.D. Cal. Aug. 28, 2006) ........ 4

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
795 F.3d 1124 (9th Cir. 2015) ........ 2

*Noveletsky v. Metro. Life Ins. Co.*,
No. 2:12-cv-00021 (NT), 2013 WL 2945058 (D. Me. June 14, 2013) ........ 3

*Randi W. v. Muroc Joint Unified School Dist.*,
14 Cal. 4th 1066, 60 Cal. Rptr. 2d 263 (1997) ........ 10

*Villa v. San Francisco Forty-Niners, Ltd.*,
--- F. Supp. 3d ----, No. 5:12-cv-05481 (EJD),
2015 WL 2250239 (N.D. Cal. May 13, 2015) ........ 12, 13

**Statutes**

CAL. WELF. & INST. CODE § 15600(a) ........ 4

CAL. WELF. & INST. CODE § 15610.30 ........ 4, 5

CAL. PROB. Code § 18100 ........ 7

## I. INTRODUCTION

Plaintiffs' response and the evidence attached thereto cannot overcome the serious legal deficiencies articulated in American General's motion for summary judgment. Plaintiffs, for example, claim to have standing to assert the exact same claims, based on the exact same facts, to recover the exact same damages. Plaintiffs concede that Donna Wills neither owned nor was the beneficiary of the Policy during any ***relevant*** time period.[1] Yet, Plaintiffs maintain that as a Plan participant who was never denied any Plan benefit, Donna has standing to bring any and all claims against American General because she is "inextricably linked to every aspect of the case." Whatever Donna Wills' rights were under the Plan (to which American General was not a party), said rights do not confer Article III standing on her claims here.

Similarly, Plaintiffs' elder abuse claim fails since no property of Donna Wills or an elder trustee was taken. Further, SDTC still cannot cite a provision of the Policy that gives rise to an alleged breach of the implied covenant of good faith and fair dealing by American General. SDTC's continued inability to identify a legally recognizable duty dooms its negligence and aiding and abetting claims. And the UCL claim is facially inapplicable as American General has received and will receive nothing as a result of Thornhill's fraud.

The Court should grant American General's motion for summary judgment in its entirety.

## II. ARGUMENT

### A. Plaintiffs Fail to Demonstrate Donna Wills Possesses Standing

In response to American General's motion for summary judgment, Plaintiffs do not suggest that Donna Wills owned the Policy at its inception, when Thornhill took loans against the Policy's cash value, or today (the relevant time periods). Nor do Plaintiffs contend that Donna Wills has standing to bring her claims against American General because she is the Policy's beneficiary (she has ***never*** been designated beneficiary). Indeed, Donna Wills never paid the

[1] Defined terms have the meanings assigned to them in American General's motion for summary judgment (Doc. 73) and American General's response to Plaintiffs' motion for partial summary judgment (Doc. 78).

Policy's premiums,[2] had no rights under the Policy at any relevant time period, and was never denied any benefits available to her under the Plan.

Instead, Plaintiffs put forth the same argument raised in their motion for partial summary judgment. Namely, that Donna Wills has standing because she may sustain some injury in the future. First, "***if*** the Policy prematurely lapses, [Donna] Wills' note [to the 2014 Trust] will not be repaid as the [2014 Trust] has no other assets." (Doc. 80, p. 17.) Second, Plaintiffs contend Ms. Wills has standing because Ms. Wills "is the only person willing and able to repay" the loans taken against the Policy. (*Id.*) But these hypotheticals, addressed at length in American General's response to Plaintiffs' motion for partial summary judgment, do not confer standing on Donna Wills. (*See* Doc. 78, pp. 8–10.) Similarly, these hypotheticals do not alter the reality that Donna Wills has sustained no harm to date and that the damages she sues for here are mere conjecture, which is of course prohibited under Article III. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1132 (9th Cir. 2015) ("A question is fit for decision when it can be decided without considering contingent future events that may or may not occur as anticipated, or indeed may not occur at all") (internal citations omitted); *King v. Nat'l Gen. Ins. Co.*, --- F. Supp. 3d ----, No. 15-cv-00313 (DMR), 2015 WL 5440826, at *3 (N.D. Cal. Sept. 15, 2015) (to establish injury in fact, a plaintiff must show an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical") (internal citations omitted).

Unable to cite controlling case law that imbues Donna with Article III standing, Plaintiffs look elsewhere by citing to an unreported 2013 opinion from the United States District Court for the District of Maine, which purports to confer, under Maine law, standing on Donna Wills. (Doc. 80, p. 17.) Read in its entirety, that case (*Noveletsky v. Metro. Life Ins. Co.*, No. 2:12-cv-

---

[2] Without citation to any evidence, Plaintiffs' statement of facts suggests that by virtue of their ownership of D&H, Donna and Richard Wills somehow paid for the Policy's premiums. (Doc. 80, pp. 7–8.) The summary judgment record is clear; neither Donna nor Richard Wills paid a penny of premiums. (*See* Doc. 73, p. 14 (citing summary judgment evidence).) All premiums were paid by D&H. (Doc. 74-5, tr. p. 14:2–15.) Plaintiffs cannot ignore the corporate formalities of D&H to confer standing.

00021 (NT), 2013 WL 2945058, at *1 (D. Me. June 14, 2013)) clearly supports American General's position.

In *Noveletsky*, the plaintiff insured brought suit against an insurance agent and others for placing the insured in an insurance product with premiums far higher than premiums in other more suitable products. 2013 WL 2945058, at *1. An irrevocable life insurance trust ("ILIT") owned the policy, and to pay for the policy's premiums, the insured made irrevocable contributions to the ILIT from her personal assets. *Id.* In moving for summary judgment, the insurance agent, much like American General, argued that the insured had no standing to sue because, by the very terms of the ILIT, the insured expressly "relinquished every interest of any nature, present or future, in the [t]rust estate." *Id.* at *3. Finding for both the agent and the insured, the Court noted that the insured (1) could not bring claims for damages to Trust assets but (2) could assert claims against the agent for fraudulently inducing the insured to create and fund the trust because no controlling authority existed on the subject. *Id.* at *3–4.

Here, Donna Wills does not sue for being fraudulently induced into acquiring anything (and, of course, all contributions to the Plan were made by D&H Manufacturing, not Donna Wills). Contrary to Plaintiffs' suggestion, Donna Wills has sustained no "independent injury"—she did not even fund the Policy's premiums. Instead, and as she testified to, Donna seeks to recover the $1.4 million taken from the Plan by Gary Thornhill, which is clearly prohibited under California law and *Noveletsky*. Donna Wills must be dismissed from this litigation for lack of standing.[3]

**B. The Elder Abuse Claim Cannot Proceed**

Opposing American General's motion for summary judgment, Plaintiffs argue that their elder abuse claim must proceed to trial because of the legislative intent behind California's Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA"). In focusing only on legislative

---

[3] Plaintiffs also attempt to distinguish *Morris v. Choicepoint Servs., Inc.*, No. C-06-1224 SC, 2006 WL 2479122, at *3 (N.D. Cal. Aug. 28, 2006) by suggesting Donna Wills seeks injury independent of the damage sustained by the Plan. No matter how Plaintiffs color their argument, Donna testified that the damages she seeks here are limited to the $1.4 million Gary Thornhill stole from the Plan and the accrued interest. (Doc. 74–4, tr. p. 17:9–12.) Donna plainly seeks to recover the damages purportedly sustained by the Plan.

intent, Plaintiffs critically overlook the statutory requirements of a claim for financial elder abuse. Plaintiffs also concede that neither Donna Wills nor SDTC has sustained any damage as a result of the alleged abuse.

1. *The Elder Abuse Statute Explicitly Precludes the Elder Abuse Claim*

Plaintiffs make an overly simplistic argument that American General's motion for summary judgment leaves "no one willing or able to pursue an elder abuse action against a person who had defrauded and manipulated an elder." (Doc. 80, p. 19.) In so doing, Plaintiffs completely ignore the express language of the financial elder abuse statute (CAL. WELF. & INST. CODE § 15610.30(a)(3), (c)) under which they sue. Indeed, Plaintiffs' response conspicuously fails to discuss, let alone even mention, a key element of financial elder abuse under CAL. WELF. & INST. CODE § 15610.30—the taking, secretion, and/or appropriation of an ***elder's*** or an ***elder's estate's*** assets.[4] Presumably, Plaintiffs do not address this crucial part of the statute because they cannot escape the inescapable—none of Donna Wills' property was taken. The summary judgment evidence confirms the Plan owned the Policy when Thornhill, as trustee, took loans from the Policy and stole from the Plan.

Rather than address the merits of American General's argument or the elements of their claim, Plaintiffs turn their attention to the legislative intent of the EADACPA, which recognizes that "elders and dependent adults may be subjected to abuse, neglect, or abandonment and that [California] has a responsibility to protect these persons."[5] CAL. WELF. & INST. CODE § 15600(a).

---

[4] Footnote two of Plaintiffs' response suggests American General does not "dispute that Ms. Wills" had property taken. Contrary to that statement, American General absolutely argued that Donna Wills had no property taken in its motion for summary judgment. (Doc. 73, p. 15 ("Because . . . no real or personal property of Donna's (an elder) was taken, secreted, misappropriated, obtained or retained . . ." the elder abuse claim fails).) Indeed, that was a recurrent theme throughout American General's motion and opposition to Plaintiffs' motion for partial summary judgment. (Doc. 78, pp. 10–11.)

[5] Plaintiffs also state that standing, for purposes of the EADACPA, "must be analyzed in a manner that induces interested persons to report elder abuse and to file lawsuits." (Doc. 80, p. 19 (emphasis removed) (internal citations omitted).) Reporting elder abuse is obviously not important to Plaintiffs here. They failed to report Thornhill to the authorities despite full knowledge of his admitted seven-figure theft.

Plaintiffs cite *In re Estate of Lowrie*, 118 Cal. App. 4th 220, 230, 12 Cal. Rptr. 3d 828 (2004) in support of their argument. Nothing in *Lowrie* is of any importance to this matter.

In *Lowrie*, the Court was presented with the classic financial elder abuse fact pattern. An elder's assets were moved into a trust which eventually came under the control of the elder's son. 118 Cal. App. 4th at 223. A granddaughter of the elder, however, felt her uncle (the elder's son), as trustee, divested the granddaughter of assets that her grandmother otherwise bequeathed to her. *Id.* at 224–25. The granddaughter filed suit for financial elder abuse. *Id.* On appeal, the uncle argued that the granddaughter lacked standing because (1) under the trust he is the named trustee and thus, the elder's personal representative and (2) the granddaughter was not a person "entitled to succeed to the decedent's estate." *Id.* at 228. Ruling in favor of the granddaughter, the Court found the granddaughter possessed the requisite standing to bring suit because to hold otherwise provided a windfall to potential abusers. *Id.* at 228–231. Put differently, the *Lowrie* court became concerned that an abuser could gain control of an elder's estate and then use a restrictive interpretation of standing to escape liability under the EADACPA by barring the claims of a relative or other interested individual. *Id.* at 231. That was the very harm the California legislature sought to avoid when it enacted the EADACPA.

Contrasting the present dispute with *Lowrie*, this Court is not charged with determining ***who*** can bring claims for financial elder abuse on Donna Wills' behalf. Instead, the focus here is on whether a claim for financial elder abuse exists in the first place. As explained *supra*, and based on a plain and ordinary reading of CAL. WELF. & INST. CODE § 15610.30, no claim exists. Certainly, the California legislature did not intend to create a cause of action for financial elder abuse when the assets of an elder have neither been secreted, taken, or misappropriated. The financial elder abuse claim fails as a matter of law.

2. *Plaintiffs Concede that no Damages Exist for the Elder Abuse Claim*

Plaintiffs identify the existence of two purportedly relevant periods to the standing analysis for Plaintiffs' financial elder abuse claim. (Doc. 80, p. 18.) The first period allegedly runs from when Thornhill stole money from the Plan to when Donna filed suit. (*Id.*) The second period runs from when Donna sold the Policy to the 2014 Trust to the present. (*Id.*) Regardless

of the applicable period, Plaintiffs contend that their elder abuse claim is premised not on the actual theft of funds from the Plan, but on Donna's ability to "demand the [Policy's cash value] be made readily available for her medical expenses." (Doc. 80, p. 18.)

To be clear, Donna's right to a reimbursement of her medical expenses is not available to her under any provision of the Policy nor is American General required to reimburse Donna for those medical expenses. Rather, Donna's ability to seek reimbursement for medical expenses was a benefit provided to her by the Plan and that right ceased to exist after Donna chose to terminate the Plan. In other words, the Plan would take loans against the Policy's cash value to pay for Donna's medical expenses on an annual basis.

Notably, Plaintiffs' response to American General's motion for summary judgment suggests that the loans taken against the Policy by the Plan's trustee (Thornhill) "diminished" Donna's right to obtain medical reimbursements by the Plan. Plaintiffs are mistaken. The Plan never denied Donna Wills any benefits nor is there any suggestion in the record that the Plan's assets became so diminished that it became unable to pay Donna Wills' medical reimbursements when due. Donna Wills regularly applied for her medical reimbursement and those reimbursements were subsequently processed and paid by the Plan.

At the time Donna sold the Policy to the 2014 Trust, the Policy possessed a cash surrender value (comprised of the Policy's accumulation value less loans and surrender charges) of approximately $2.8 million. Even a catastrophic medical event did not risk the Plan's ability to cover Donna's medical reimbursements under the Plan. There are no damages sustained as a result of the alleged financial elder abuse.

**C. SDTC's Remaining Claims Fail as a Matter of Law**

*1. SDTC Concedes its Implied Covenant Claim Fails*

As this Court has previously found, a breach of the implied covenant of good faith and fair dealing under California law requires a plaintiff allege "the specific contractual obligation from which the imposed covenant of good faith and fair dealing arose." *Dunkel v. eBay, Inc.*, 5:12-cv-01452 (EJD), 2014 WL 1117886, at *5 (N.D. Cal. Mar. 19, 2014). To use Plaintiffs' own words, SDTC "thumbs its nose" at *Dunkel* by refusing to identify the provision in the Policy from which

American General's duty arises. SDTC also fails to explain how American General prevented SDTC, as trustee of the 2014 Trust, from receiving the Policy's benefits. SDTC premises this failure on its misplaced argument that a life insurance policy only provides "benefits when the insured dies." (Doc. 80, p. 22.)

But there are a variety of benefits SDTC could receive as the Policy's owner. Obviously, SDTC can take loans against the Policy. SDTC can also surrender the Policy for cash, change the Policy's beneficiary, and sell the Policy. None of these benefits have been denied, and SDTC has failed to identify how American General has prohibited it from doing that which is expressly permitted by the Policy. *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012) (internal citations omitted). The breach of the implied covenant of good faith and fair dealing claim fails as a matter of law and must be dismissed.

*2. SDTC's Negligence Claim Fails*

a. The Court Has Not Determined that a Duty Exists

Citing the Court's order denying American General's Rule 12(c) motion for judgment on the pleadings filed in 2013, SDTC contends that American General's motion for summary judgment "constitutes an improper motion for reconsideration." (Doc. 80, pp. 22–23.) SDTC is incorrect. In the briefing on American General's motion for judgment on the pleadings, American General argued that the negligence claim must be dismissed because the application of California Probate Code § 18100[6] barred a finding of duty. (Doc. 18, pp. 13–14.) At no point in the motion for judgment on the pleadings briefing did American General argue duty except within the construct of Probate Code § 18100, and the Court's order expressly acknowledged the limited nature of the briefing on the issue. (*See* Doc. 18; Doc. 26, p. 7 ("Absent application of § 18100, the court rejects American General's argument that the negligence claim fails for a lack of cognizable duty.") The issue of duty—independent of Probate Code § 18100—has not been specifically addressed.

---

[6] Under California Probate Code § 18100, a third party may be protected from entering into transactions with a trustee under certain circumstance. (Doc. 26, pp. 4–6.) While American General has not re-urged the application of Probate Code § 18100 in its motion for summary judgment, it expressly reserves all rights to raise the issue at trial.

b. SDTC Cannot Articulate a Duty Owed

American General's motion for summary judgment sets forth the three duties on which SDTC's claims rest: a duty to (1) investigate a change of trustee, (2) investigate or question the validity of loans taken against a life insurance policy, or (3) warn a third party insured about activities on a life insurance policy that measures the insured's life. SDTC does not address these specific duties in response to American General's motion, stating instead that "[t]he duty owed in this case . . . . is a broader [one]." (Doc. 80, p. 24.) According to SDTC, American General owes a duty "of reasonable and ordinary care to enact and enforce appropriate policies and procedures to prevent foreseeable harm to its policyholders." (*Id.*) More specifically, SDTC asserts that the duty owed is a "duty of care to Plaintiffs to use reasonable skill, care and prudence to properly manage, hold and/or otherwise oversee and protect Donna Wills' benefits under her Policy." (*Id.* at p. 12.)

Semantics aside, the duty articulated by SDTC is but another method of framing the same three duties identified in American General's motion. Of course the "duty of care to use reasonable skill, care and prudence to properly manage, hold and/or otherwise oversee and protect Donna Wills' benefits under her Policy" requires the Court to determine whether American General owed a duty to investigate a change of trustee, investigate or question the validity of loans, or warn Donna Wills about activities on a policy that she did not own.[7] American General is unaware of any authority imposing such duties on an insurer, and Plaintiffs' only citations to case law giving rise to a duty relate to the general proposition that an insurer owes a "heightened duty of good faith and fair dealing" to its policyholders and insureds. (Doc. 80, pp. 29–30.) The cases relied upon by Plaintiffs, however, are all inapposite. For instance, *Neff v. New York Life Ins. Co.* and *Vu v. Prudential Prop. & Cas. Ins. Co.* dealt with an insurer's handling of a ***claim***. Here no such circumstances exist.

---

[7] It bears mentioning that SDTC has still failed to cite any specific duty imposed on American General by statute, regulation, or otherwise. Further, to the extent Plaintiffs' claims are premised on a duty to protect ***Donna's*** assets, the claim must fail because no assets of Donna have been harmed.

Left without relevant authority, Plaintiffs note that "all persons have a duty to use ordinary care to prevent others from being injured as a result of their conduct," and that the *Rowland* factors,[8] as discussed in *Randi W. v. Muroc Joint Unified School Dist.*, 14 Cal. 4th 1066, 1077, 60 Cal. Rptr. 2d 263 (1997), establish exceptions to the general duty obligations imposed on all parties. (Doc. 80, p. 25.) But at the end of the day, the Court—not the jury—must determine whether a duty exists. *See Delgado v. Am. Multi-Cinema, Inc.*, 72 Cal. App. 4th 1403, 1406, 85 Cal. Rptr. 2d 838 (1999) ("The existence of a legal duty of care, the breach of which may constitute negligence, is a question of law.") And to make that determination, the Court must (according to Plaintiffs) weigh the *Rowland* factors to determine whether American General owed any of the specific duties set forth in the Second Amended Complaint.

As for **foreseeability,** for instance, the Court must decide "whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Laabs*, 175 Cal. App. 4th at 1273. Foreseeability, then, "with respect to duty is determined by focusing on the general character of the event and inquiring whether such event is 'likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.'" *Id.* (internal citations omitted).

This is exactly why American General posed the litany of questions found in footnotes four and five of its motion for summary judgment. How could any of the actions complained of (the change of trustee, the contractually permitted loan requests) lead a reasonably thoughtful person to act differently? The Court must answer these questions to determine whether, "focusing on the general character of the event," it was foreseeable that SDTC would sustain harm here.

[8] The *Rowland* factors include: the foreseeability of the harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. *Laabs v. S. Cal. Edison Co.*, 175 Cal. App. 4th 1260, 1272, 97 Cal. Rptr. 3d 241 (2009) (internal citations omitted)

SDTC suggests that those questions are better left to the trier of fact. But, again, it is the Court that must determine whether the duty exists in the first instance.

Nor do the other *Rowland* factors weigh in favor of a finding of duty. By way of example only, how can American General be charged with moral blame and how does a finding of liability prevent future harm? As explained in American General's moving papers, the Policy ***requires*** American General to process loan disbursements and ownership changes. (Doc. 73, pp. 17–21.) What is an insurer to do if a twenty-year policy owner suddenly applies for a $1 million loan because of an unexpected and immediate need to access those funds? If the insurer questioned the loan's purpose or impermissibly delayed the processing of the loan to investigate the request, it subjects itself to liability and litigation for breaching the terms of the contract.[9] The same conclusion applies with equal force if an insurer questions or rejects a trustee appointment.

Certainly, a legal duty cannot exist that places an insurer (or any defendant) in such an impossible situation. A finding of duty creates chaos and uncertainty for insurers and policy owners alike; the Court should find no duty exists as a matter of law.

c. Donna Wills' Personal Knowledge[10]

There is no doubt that Donna, by want of ordinary care, brought upon the injuries on which she now seeks to recover. For instance, Thornhill defaulted on his obligations under a $400,000 promissory note he executed with Donna in 2003 by ***never*** repaying the $400,000 principal. Notwithstanding his default, Donna, as the sole member of Wills Management, LLC, first undertook steps to appoint Thornhill as the Plan's trustee in 2008—nearly three years before Thornhill first stole from the Plan. Similarly, Thornhill lost $1 million of Donna's money in a Ponzi-scheme. By 2010 (or a year before he stole from the Plan), Thornhill had been personally

---

[9] SDTC contends it was foreseeable that it would sustain harm because of the "clear conflict of interest inherent in Thornhill serving as the servicing agent for the Policy and the trustee of the plan that owned the Policy." (Doc. 80, p. 26.) Any such conflict, however, ceased existing when American General terminated Thornhill in June 2010—nearly six months before Thornhill first took loans against the Policy and stole from the Plan in January 2011. (*Id.* at pp. 10–11.)

[10] Plaintiffs' contend the evidence regarding Donna Wills' relationship with Thornhill is inadmissible because it is irrelevant and prejudicial. (Doc. 80, p. 25.) The Court is more than able to determine for itself what is and is not irrelevant or prejudicial.

implicated in that fraud in litigation involving Donna. Donna even acknowledged her admitted mistakes with respect to Thornhill when she called American General to discuss the theft in January 2012.[11]

Donna's inaction proves that—even with Donna's knowledge—a reasonably prudent person would not act any differently than American General and Donna Wills did. The negligence claim cannot exist in light of these facts.

3. *The Aiding and Abetting Claims Fail*

SDTC does not now argue that American General faces liability for aiding and abetting based on its "actual knowledge" of Thornhill's theft as its predecessor in interest (the Plan) did in opposition to American General's motion for judgment on the pleadings. Instead, SDTC proceeds on the aiding and abetting claims because American General owed an independent duty to SDTC. (Doc. 80, p. 30.) For the reasons already discussed above and in American General's motion for summary judgment, no such duty was owed and the claims must fail.

4. *The UCL Claim is Irredeemable*

Recovery for a violation of the UCL is limited to injunctive relief and restitution. *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 790 192 Cal. Rptr. 3d 881, 891 (2015). SDTC concedes it seeks restitution only, and in doing so, further admits (by its silence) that American General has not taken the $1.4 million SDTC seeks to recover here. (Doc. 80, pp. 30–31.) For that reason, American General moved this Court to grant it summary judgment on SDTC's UCL claim because restitution requires that "both money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *In re Tobacco Cases II*, 240 Cal. App. 4th at 779.

---

[11] Contrasting Donna's experience, the record is devoid of evidence suggesting American General could have anticipated Thornhill's theft. Plaintiffs (improperly) argue that American General terminated Thornhill for being "dishonest." (Doc. 80, p. 10.) But that argument contradicts the record, which shows American General terminated Thornhill because of his public statements about the Company. Public untruths about American General can hardly be qualified as "dishonesty" such that American General knew or should have known that Thornhill may steal from a policy's owner. Plaintiffs also cite a number of lawsuits involving American General and Thornhill to suggest American General was "on notice" of Thornhill's character. But again, nothing in those actions indicated Thornhill stole or could have stolen from a policy owner.

SDTC attempts to salvage its UCL claim by limiting its damages for its UCL claim to the interest that has accrued on the Policy. (Doc. 80, p. 31.) Specifically, SDTC states that if the loans are repaid, any accrued interest thereon will be "paid to American General." (*Id.*) Any loan taken against the Policy, however, is a loan against the Policy's cash value. (Doc. 74-12, p. 16.) The interest accrued on the Policy will not be paid to American General. Rather, interest is to be paid back into the Policy. (*Id.* (noting interest capitalized into loan, which will then be repaid).) The loans taken against the Policy then are no different than a loan taken against a 401(k) or an individual retirement account.

Nor does SDTC identify any unlawful or unfair conduct in its response to American General's motion for summary judgment. SDTC cites no statutes or other laws that American General violated, and SDTC fails to even address American General's argument that it cannot be unfair for American General to comply with the express terms of the Policy contract. Rather, SDTC cites to only the bare allegations within its Second Amended Complaint and concludes that American General's conduct is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." (Doc. 80, p. 31.) SDTC must do more to defeat American General's motion; the Court must dismiss the UCL claim as a matter of law.[12] *Villa*, 2015 WL 2250239 at *2.

[12] Again citing the Court's order on American General's motion for judgment on the pleadings, SDTC suggests that this Court previously found that American General's conduct represents an "unfair" business practice under the circumstances. (Doc. 80, p. 30.) The Court's order, however, was decided on a 12(c) motion under a very different standard than the one applicable to a Rule 56 summary judgment motion. An order on a 12(c) motion is not a finding of liability, and SDTC can no longer rely on the bare allegations within its Second Amended Complaint. But instead, SDTC must come forward with evidence suggesting American General's conduct is "unfair" in light of American General's motion and the evidence submitted in support thereof. *Villa v. San Francisco Forty-Niners, Ltd.*, --- F. Supp. 3d ----, No. 5:12-cv-05481 (EJD), 2015 WL 2250239, at *2 (N.D. Cal. May 13, 2015) ("the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment.") It has not, and the Court has not entered an order barring American General from moving for summary judgment given the evidence obtained in discovery.

## III. CONCLUSION

For each of the foregoing reasons, and the reasons more fully stated in American General's motion for summary judgment and American General's response to Plaintiffs' motion for partial summary judgment, the Court should grant American General's motion and dismiss Plaintiffs' Second Amended Complaint in its entirety.

Date: November 19, 2015

EDISON, MCDOWELL & HETHERINGTON, LLP

By: /s/ David T. McDowell
Jodi K. Swick
David T. McDowell*
Jessica L. Wilson*
Andrew R. Kasner*

.

ATTORNEYS FOR AMERICAN GENERAL LIFE INSURANCE COMPANY

* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November, 2015, a true and correct copy of the foregoing, with all attachments, has been filed with the Court's CM/ECF system, which will provide electronic notice and copies of this filing to all counsel of record as follows:

**Counsel for Plaintiffs:**
Maria S. Bellafronto
Aleksandr Korzh
70 South First Street
San Jose, California 95113
mbellafronto@hopkinscarley.com
akorzh@hopkinscarley.com

**Counsel for Third Party Defendants:**
Steven R. Levy
Law Office of Steven R. Levy
17670 Woodland Avenue
Morgan Hill, California 95037
slevy@verzion.net
slevy@bigfoot.com

By: /s/ David T. McDowell
David T. McDowell