United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SOUTH DAKOTA TRUST COMPANY, Trustee of the Donna Wills 2014 Irrevocable Trust, and DONNA L. WILLS, an individual,<br><br>Plaintiffs,<br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 5:13-cv-05860-EJD<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE**<br><br>Re: Dkt. Nos. 73, 77 |

## I. INTRODUCTION

This lawsuit arises out of a third party's fraudulent procurement of $1.4 million in loans against a life insurance policy issued by Defendant American General Life Insurance ("American General") insuring the life of Plaintiff Donna Wills ("Ms. Wills") and her late husband Richard Wills. Plaintiffs Donna Wills and South Dakota Trust Company ("SDTC"), trustee of the Donna Wills 2014 irrevocable Trust II ("SDTC") move for partial summary judgment on two affirmative

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL
SETTING CONFERENCE

1

1  defenses. Defendant American General moves for summary judgment on all claims. For the reasons set forth below, Plaintiffs' motion for partial summary judgment is granted and Defendant's motion for summary judgment is denied.

## II.  BACKGROUND

In December of 1997, Gary Thornhill ("Thornhill"), through his company First Financial Resources, suggested that Donna and Richard Wills, who owned D&H Manufacturing Company ("D&H"), enroll D&H in the ECI Plan, which is a multiple employer welfare benefit plan organized under Section 419 of the Internal Revenue Code. First Financial described the ECI Plan as follows: (1) D&H would make a tax-deductible contribution into to the ECI Plan; (2) the ECI Plan would then purchase life insurance on plan participants, naming itself as beneficiary; and (3) if a participant dies, the ECI Plan would pay death benefits to the participant's beneficiary.

D&H enrolled in the ECI Plan. The agreement which governed it required D&H to make contributions that equaled the cost of purchasing a life insurance policy in the amount set forth in D&H's adoption agreement. The D&H adoption agreement provided that D&H would fund life insurance for eligible employees equal to 1000 percent of the employee's highest compensation in any calendar year, not to exceed $15.4 million. Although D&H had other employees, the only participants in the ECI Plan were the Wills.

The ECI Plan, on behalf of D&H, then purchased American General Life Insurance Policy number A70001695L insuring Donna and Richard Wills (the "policy"). The policy contained a cash value that was to be funded by premium payments and carried a death benefit of $15.4 million. It also permitted the owner to take loans against the cash value. If, however, the total amount of the outstanding loans ever exceeded the cash value of the policy, the policy would lapse. Similarly, if the cash surrender value (cash value less any outstanding loans) on the day maintenance fees are due were not sufficient to pay for the fees, the policy would lapse. If the policy lapsed and was not restored during the permitted grace period, the death benefit is permanently lost.

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

2

Between 1998 and 2000, D&H contributed $3 million to the ECI Plan and took an equal amount of tax deductions. The ECI Plan used these contributions to fund the policy and Thornhill received commissions from American General in relation to the policy until 2000. The ECI Plan eventually terminated, and a new entity, the Wills Management, LLC Employee Welfare Benefit Plan ("Wills Management Plan") became the owner of the policy. The Wills Management Plan also named itself as the beneficiary, with Republic Bank & Trust as the trustee.

Ms. Wills appointed Thornhill as the trustee of the Wills Management Plan in 2008, which Republic Bank reported to American General on April 29, 2008. Approximately two years later, American General terminated its relationship with Thornhill because he was actively encouraging other American General producers to replace their clients' American General policies with non-American General products, and making inappropriate and inaccurate statements about American General.

In January of 2011, Thornhill, as trustee of the Wills Management Plan, submitted a loan request to American General for $600,000 along with documentation evidencing his authority to act as trustee. American General processed the loan request and issued a check to Thornhill as trustee. Thornhill deposited the check in the Wills Management Plan's bank account but then secretly transferred the funds to his own personal account. In October of 2011, Thornhill submitted another loan request to American General, this time for $800,000. As before, American General issued a check to Thornhill as trustee, and, also as before, Thornhill transferred the funds to himself.

Thornhill's misconduct was discovered in late 2012. He signed a confession of judgment addressing the loans taken on the American General policy as well as another failed investment in a Ponzi scheme he had recommended to Ms. Wills and her children. He signed a settlement agreement requiring the repayment of the funds identified in the judgment and an additional

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

3

$400,000 that Richard and Donna Wills had loaned to Thornhill before he was appointed as trustee.

The Wills Management Plan was eventually terminated and the American General policy was transferred to Ms. Wills in May of 2014. Ms. Wills sold the policy one month later to the Donna Wills Trust 2014 Irrevocable Trust (the "Trust") under a written purchase and sale agreement in exchange for a promissory note for $3,284.509. Defendant South Dakota Trust Company ("SDTC") is the current trustee of the Trust.

This action was initiated against American General by "Thomas L. Wills, Successor Trustee of the Wills Management Employment Welfare Benefit Plan; and Donna Wills, an individual, and the Wills Family Irrevocable Trust II, as beneficiaries of the Wills Management Employment Welfare Benefit Plan." Plaintiffs later filed a Second Amended Complaint to change the operative plaintiffs to "South Dakota Trust Company, Trustee of the Donna Wills 2014 Irrevocable Trust, and Donna M. Wills, an individual." Plaintiffs assert the following claims against American General: (1) negligence, (2) financial elder abuse in violation of California Welfare and Institutions Code § 15610.30, (3) aiding and abetting Thornhill's breach of fiduciary duty, (4) aiding and abetting Thornhill's fraud, (5) violation of California's Unfair Competition Law ("UCL"), and (6) breach of the implied covenant of good faith and fair dealing.

American General moves for summary judgment on all claims. Among other things, American General asserts that Ms. Wills lacks Article III standing because she did not own the American General Policy at any relevant time, has no rights under the policy, was never designated a policy beneficiary, and relinquished all interest in the policy to the Trust. Plaintiffs move for partial summary judgment on American General's twenty-second and twenty-fifth affirmative defenses, both of which allege that the only party with standing to assert a claim against American General for damages is the policy's designated owner, Plaintiff SDTC.

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

4

## III. STANDARDS

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a): Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publishing Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). To meet this burden, the non-moving party must come forward with admissible evidence. Fed. R. Civ. P. 56(c); see also, Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202; Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

5

## IV. DISCUSSION

### A. Ms. Wills' Standing

The constitutional standing doctrine "functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 191 (2000). Generally, the inquiry critical to any standing issue is "'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Allen v. Wright, 468 U.S. 737, 750-51 (1984) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Standing under Article III of the Constitution has three basic elements: (1) an "injury in fact," which is neither conjectural or hypothetical, (2) causation, such that a causal connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stage of the litigation." Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting Lujan, 504 U.S. at 561). Thus, "[i]n response to a summary judgment motion . . . the [moving party] can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true." Lujan, 504 U.S. at 561.

The parties focus on the first element of standing: injury in fact. To prove that element, "the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979). In this case, it is undisputed that Ms. Wills is not asserting that Thornhill's fraudulent loans caused her the direct loss of funds. Indeed, she cannot do so, because she did not contribute the $3 million that was used to purchase and maintain the American General

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

6

life insurance policy, D&H did. Moreover, but for a short period in 2014, long after Thornhill's misconduct, Ms. Wills was not the owner of the policy.

Instead, Ms. Wills claims standing based on the following: (1) if the policy prematurely lapses, Ms. Will's $3,284.509 promissory note, which she accepted as payment for the policy, will not be repaid because the current owner of the policy, the Trust, has no other assets, and (2) Ms. Wills is the only person willing and able to repay the fraudulent loans (to keep them from lapsing) to prevent further and potential future harm to the policy. Ms. Wills reasons that in order to stop the continuing harm and risk of premature collapse of the policy, she will have to repay the fraudulent loans and in so doing, suffer a direct financial harm. Plaintiff's Motion at 9:16-17.

American General contends that Ms. Wills' alleged injuries are too speculative and not ripe for adjudication. American General reasons that at present, the policy has not lapsed and may never lapse because Ms. Wills may pass away while the policy is in force, or because SDTC may choose to surrender the policy before the policy lapses, or Thornhill could fulfill the terms of his settlement and repay the money he stole from the plan. Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment at 8:21-26.

Notably, Ms. Wills' injury-in-fact articulation does not identify a *present* harm but describes some risk of *future* harm. Faced with a similar question, the Ninth Circuit has held that "[i]f a plaintiff faces 'a credible threat of harm,' . . . and that harm is 'both real and immediate, not conjectural or hypothetical,' . . . the plaintiff has met the injury-in-fact requirement for standing under Article III." Krottner v. Starbucks Corp., 628 F.3d 1139, 1143 (9th Cir. 2010) (employee had standing to sue for negligence based on allegation that theft of company laptop in which personal information was stored subjected employee to increased risk of future identity theft). Consistent with Krottner, the Court finds that threat of harm to Ms. Wills arising from the potential lapse of the policy is sufficient to state an injury-in-fact for purposes of standing.

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

7

In the midst of briefing on the pending motions, on November 12, 2015, Ms. Wills loaned SDTC $1,867.902.94 to pay off the loans on the Policy and to stop the interest from accruing. See Notice of Errata to Supplemental Decl. of Donna Wills In Support of Reply to Opposition to Plaintiffs' Partial Motion for Summary Judgment. This post-filing payment demonstrates that Ms. Wills' asserted risk of future harm at the time she initiated this lawsuit was real and immediate, and not conjectural or hypothetical.

The redressability element of standing is also satisfied. Ms. Wills has clarified that she seeks to recover the $1,867,902.94 she used to protect the policy. See Plaintiffs' Reply Memorandum of Points and Authorities In Support of Motion Partial Motion for Summary Judgment, p.7. Plaintiffs' allegations are also sufficient to satisfy the causation element of standing. Although it is undisputed that Thornhill was responsible for the fraudulent loans on the policy, Plaintiffs allege that American General also caused injury by failing to "exercise any due diligence before allowing Thornhill to misappropriate approximately $1.4 million . . . after his appointment had been terminated by Defendant"; failing to "place any kind of 'alert' on the Plaintiffs' Policy when Defendant had actual knowledge that Thornhill . . . had on numerous prior occasions been accused of fraud and breach of fiduciary duty"; failing to notify Ms. Wills that Thornhill had withdrawn $1.4 million from the policy; and failing to send any type of "comfort letter" or "activity letter" to Ms. Wills about the loans Thornhill made, including but not limited to failing "to accurately report the outstanding and substantial 'loan' balance on Defendant's 2012 annual statement for the Policy." SAC, ¶39.[1]

For the reasons discussed above, Plaintiffs' allegations and the evidentiary record are sufficient to confer standing on Ms. Wills to assert claims against American General.

---

[1] Whether these allegations are sufficient to establish Plaintiffs' claims is discussed separately below.

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

8

Accordingly, Plaintiffs' motion for partial summary judgment against American General on the twenty-second and twenty-fifth affirmative defenses is granted.

B. Financial Elder Abuse Claim

Pursuant to California Welfare and Institutions Code § 15610.30(a), "financial abuse" of an elder occurs when a person: (1) "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both," (2) "[a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both, or (3) [t]akes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence." The statute then defines two ways a person can "take, secrete, appropriate, obtain or retain property," the first being when "the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult," and the second being "when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(b), (c). For the purposes of applying § 15610.30, the taken property must be owned either by the elder or by the elder's "representative," which is defined as "[a] conservator, trustee, or other representative of the estate of an elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(d)(1).

American General moves for summary judgment on this claim because the undisputed evidence shows that the Wills Management Plan, and not Ms. Wills, was the owner of the policy at the time Thornhill withdrew $1.4 million in loans. American also contends that SDTC is not an elder, and therefore cannot bring a claim for financial elder abuse.

Ms. Wills acknowledges that she is not the owner of the policy. Nevertheless, she contends that she has standing to bring an elder abuse claim because she was harmed. As a direct

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

9

result of the fraudulent loans, Ms. Wills lost the ability to use the cash value of the policy to pay for her medical expenses. Further, citing Estate of Lowrie, 118 Cal.App.4th 220, 230 (2004), Plaintiffs urge a broad interpretation of the elder abuse statute to induce interested parties to report elder abuse and to file suits in order to protect victims. In Lowrie, the court held that a granddaughter had standing to bring an elder abuse claim against her uncle for abuse of her grandmother, the decedent. The uncle had allegedly exploited his relationship with the decedent and through manipulation, fraud and undue influence enticed decedent to gift him property and to change her estate plan so that the uncle would receive substantially all of decedent's assets.

Applying Lowrie, and for the reasons already discussed above with respect to standing in general, the Court finds that Ms. Wills has standing to assert a claim for elder abuse: she is an elder within the meaning of California Welfare and Institutions Code §15610.27 and has alleged a credible threat of future harm because of the fraudulent loans. SDTC also has standing to assert a claim for elder abuse. The court in Lowrie instructs that "[s]tanding for purposes of the Elder Abuse Act, must be analyzed in a manner that induces interested persons to report elder abuse and to file lawsuits against elder abuse and neglect. In this way, the victimized will be protected." Lowrie, 118 Cal.App.4th at 230. The policy is an asset of the Trust. As the current trustee of the Trust, SDTC is clearly an interested party and is uniquely situated to seek redress for the fraudulent loans made on the policy. Accordingly, American General's motion for summary judgment on the elder abuse claim is denied.

C. Breach of the Implied Covenant of Good Faith and Fair Dealing

"It has long been recognized in California that every contract contains an implied covenant of good faith and fair dealing that neither party will injure the right of the other party to receive the benefits of the agreement." In re Apple In-App Purchase Litig., 855 F.Supp. 2d 1030, 1041 (N.D. Cal. 2012), citing Wolf v. Walt Disney Pictures & Tel., 162 Cal.App.4th 1107, 1120 (2008). American General seeks summary judgment on the claim for breach of the covenant of good faith

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

10

and fair dealing because the undisputed evidence shows that it merely transferred the trust funds from the policy to the plan's bank account, in accordance with its contractual obligations, and that it was Thornhill who stole the money from the plan's account.

Although not entirely clear, it appears that the basis for Plaintiffs' breach of the implied covenant claim is that American General frustrated SDTC's contractual right to a $15.4 million death benefit by "holding its palm out to collect premiums while sticking its head in the sand" regarding Thornhill's conduct. Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p.16. American General allegedly was "sticking its head in the sand" when, among other things, American General failed to conduct any due diligence before allowing Thornhill to take out the fraudulent loans after he was terminated; failed to place any alert on the policy when American General knew that Thornhill had been accused on numerous occasions of fraud and breach of fiduciary duty; and failed to notify Ms. Wills of the fraudulent loans. This evidence is sufficient to raise a triable issue with respect to the breach of covenant claim. See, e.g. Lincoln General Ins. Co. v. Access Claims Adm'rs Inc., 596 F.Supp.2d 1351 (E.D. Cal. 2009) (breach of covenant of good faith and fair dealing may be based upon "objectively unreasonable" conduct); see also R.J. Kuhl Corp. v. John L. Sullivan, 13 Cal.App.4th 1589, 1602 (1993) (breach of the covenant may be based on contracting party's "lack of diligence and slacking off"). Accordingly, American General's motion for summary judgment on the breach of implied covenant of good faith and fair dealing claim is denied.

D. Negligence and Aiding and Abetting Claims

Plaintiffs' negligence claim is predicated on the following allegations:

> 38. Defendant owed a duty of care to Plaintiffs to use reasonable skill, care and produce to properly manage, hold and/or otherwise oversee and protect Donna Wills' benefits under her Policy, including the funds held in her Cash Value, which duties included exercising due diligence and investigation of suspicious activity when there is a foreseeable risk of harm to the benefits afforded to Donna Wills under her Policy.

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

11

> 39. Defendant breached its duty by, among other things, engaging in the follow[ing] actions and/or inactions:
>
> (a) failing to exercise any due diligence before allowing Thornhill to misappropriate approximately $1.4 million between January 2011 and October 2011, after his appointment had been terminated by Defendant . . . and despite the fact that Defendant had actual knowledge of Thornhill's fraudulent behavior, untrustworthiness and past breaches of fiduciary duties;
>
> (b) Failing to place any kind of "alert" on the Plaintiffs' Policy when defendant had actual knowledge that Thornhill. . . had on numerous prior occasions been accused of fraud and breach of fiduciary duty, and further given that Donna Wills, who was 74 years old in 2011, was lacking any knowledge of Thornhill's untrustworthiness;
>
> (c) Failing to notify Donna Wills or call to her attention that her trustee, Thornhill . . . was withdrawing $1.4 million as "loans" to himself under her Cash Value, thereby reducing the benefits under the Policy;
>
> (d) Ignoring the danger signals, "red flags" and conflict of interest associated with Thornhill having set up Plaintiff's life insurance plan and thereafter concurrently serving as the trustee of the Plan/owner of the Policy, as well as Donna Wills' loan servicing agent, despite being in the best position to detect such danger signals and red flags; and
>
> (e) Failing to send any type of "comfort letter" or "activity letter" to Donna Wills . . . about the sizeable loans Thornhill made against her Cash Value. . . .

Second Amended Complaint, ¶¶38, 39.

In order to plead a claim for negligence under California law, a plaintiff must establish the following elements: (1) the defendant owed a legal duty to use due care, (2) a breach of that duty, and (3) the breach was the proximate or legal cause of the resulting injury. Ladd v. Cnty. of San Mateo, 12 Cal. 4th 913, 917 (1996). "Whether a legal duty arises is a 'question of law which is simply an expression of the sum total of the policy considerations that lead a court to conclude that a particular plaintiff is entitled to protection.'" Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir. 2003), quoting Jacoves v. United Merchandising Corp., 9 Cal.App.4th 88, 114 (1992). In addition, liability may be imposed "on one who aids and abets the commission of an intentional

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

12

tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Saunders v. Super. Ct., 27 Cal. App. 4th 832, 846 (1994).

American General contends that summary judgment on the claims for negligence and aiding and abetting is warranted for several reasons. First, American General contends that it had no legal duty to prevent Thornhill from being appointed as trustee. Next, American General contends that it acted in accordance with the policy terms when it processed Thornhill's loan requests, and performed the necessary diligence by confirming that Thornhill had the authority to borrow funds, confirming the signatures on Thornhill's disbursement requests, confirming that no ownership changes had taken place in the prior six months, confirming that no loans had been taken in the last six months, and obtaining loan approval from two managers. Further, American General contends that the plan documents "released" American General from "inquiring into the decision or authority" of the plan's trustee, Thornhill, to make the loan requests. American General also contends that it had no duty to warn Plaintiffs of Thornhill's involvement in five lawsuits.

Under California law, even where there is a contractual relationship between the parties, a claim for negligence may arise. See Everett Associates, Inc. v. Transcontinental Ins. Co., 159 F.Supp.2d 1196, 1202 (N.D. Cal. 2001) ("failure to use reasonable care in performing contractual duties may give rise to actions sounding in tort and in contract."). In this case, Plaintiffs have set forth facts that support an inference that American General failed to use reasonable care in performing its contractual duties. American General attempts to limit its liability by restricting its role to that of insurance carrier simply following standard procedures, and asserting no responsibility for Thornhill's appointment as trustee. American General, however, was also Thornill's employer. As his employer, American General was privy to significant information

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

13

bearing on Thornhill's trustworthiness of which Ms. Wills was unaware. In particular, there is evidence that American General and Thornhill were named as defendants in suits involving claims of fraud and/or breach of fiduciary duty relating to Thornhill's role as an American General agent.

Applying the factors set forth in <u>Rowland v. Christian</u>, 69 Cal.2d 108, 112 (1968)), the Court holds that American General owed Plaintiffs a duty to use ordinary care to prevent harm to Plaintiffs. The potential for Thornhill to take fraudulent loans undetected against Plaintiffs' policy was foreseeable. Indeed, American General had an express policy forbidding its agents from concurrently serving as trustees of their customers' trusts. Yet, American General had no protocol or procedure in place to prevent this type of conflict from arising. Furthermore, for over two years after Thornhill's termination, American General continued to represent that Thornhill was the servicing agent under the policy. Under these circumstances, a reasonable jury could conclude that American General's failure to exercise ordinary care caused Plaintiffs' injury. <u>Lugtu v. California Highway Patrol</u>, 26 Cal.4th 703, 716 (2001) (one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct of a third person).

The moral blame factor stated in <u>Rowland</u> also weighs in favor of imposing a duty of ordinary care on American General. A reasonable jury could conclude that American General was guilty of moral blame in light of the evidence that American General and Thornhill were named as defendants in multiple lawsuits involving claims for fraud and/or breach of fiduciary duty relating to Thornhill's role as an American General agent, and yet American General processed Thornhill's fraudulent loans in the ordinary course of business. The remaining factors in Rowland, namely public policy considerations, the extent of the burden to American General, the consequences to the community of imposing a duty, and the availability, cost, and prevalence of insurance for the risk involved, also weigh in favor of imposing a duty of care on American General under the unique factual circumstances of this case. As the insurance provider and an employer of insurance

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

14

agents, American General was well positioned to implement procedures and protocols to prevent its employees from acting in the dual capacity of servicing agent and trustee of a plan that owns an American General policy, and to detect fraudulent loans. Accordingly, American General's motion for summary judgment on the negligence claim is denied.

E. Unfair Competition Claim for Restitution

California Business & Professions Code §17200 defines unfair competition as any "unlawful, unfair or fraudulent business act or practice." "Unlawful" practices are forbidden by law. Saunders v. Super. Ct., 27 Cal.App.4th 832, 838 (1999). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999). The "fraudulent" prong requires a showing of actual or potential deception to some members of the public, or harm to the public interest. See id. at 180.

American General contends that the claim for unfair business practices fails as a matter of law because the undisputed facts show Thornhill, not American General, stole the funds from the plan. As discussed previously in the context of Defendant's motion for judgment on the pleadings, this argument ignores Plaintiffs' allegation and facts showing American General's blind reliance on Thornhill's position as a trustee, despite all the "red flags" known to it, which a reasonable jury may determine constitute an "unfair" business practice. See Gregory v. Albertson's Inc., 104 Cal.App.4th 845, 854 (2002) ("unfair" business practice is not limited solely to violations of law, but can be based on violations of public policy or other conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.)

Lastly, American General contends that it did not withhold property from Plaintiffs, and therefore Plaintiffs cannot recover restitution for the alleged unfair business practices. Plaintiffs, however, seeks restitution for the interest on the fraudulent loans that has accrued and continues to

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE

15

accrue. In rebuttal, American General contends that the interest is paid back into the policy, and not to American General.

Notwithstanding American General's argument, the policy provides that Death Benefit Proceeds and the Cash Surrender Value are reduced by any outstanding policy loan, including unpaid interest. See Docket No. 74, pp. 8, 9, 16. In light of this policy language, there remains a triable issue of fact with respect to the amount of restitution, if any, to which Plaintiffs are entitled.

## V.  CONCLUSION

For the reasons set forth above, Plaintiffs' motion for partial summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED.   The Court will conduct a trial setting conference on October 26, 2017 at 10:00 a.m. The parties shall file a joint trial setting conference statement no later than October 16, 2017.

**IT IS SO ORDERED.**

Dated:  September 15, 2017

_____
EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:13-CV-05860-EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; SETTING TRIAL SETTING CONFERENCE